## C. W. BARNES, Appellant, v. CITY OF KIRKS-VILLE.

### In Banc, December 8, 1915.

1. **CONSTITUTIONAL LAW: Title: Four Councilmen in Title: Two in Body of Act.** The title of an act authorizing a city of the third class to elect a mayor and four councilmen at large, the body of which provides for the election of four councilmen as a maximum, but permits the election of three or even two according to the population of cities adopting the act, is not violative of the Constitution, since the title is a fair forecast of the contents of the bill and its subject.

2. ———: ———: **Population.** Nor does the body of the act use words of present meaning when referring to the population which shall entitle certain cities to organize thereunder, but a simple inspection of its language demonstrates that it only means the future population which those cities must have that are to elect two or three or four councilmen according to the apportionment made by the act.

3. ———: **Commission Form of Government: Special Law.** The Act of 1913, authorizing cities of the third class, after having adopted it, to elect a mayor and two, three or four councilmen at large, is not a special or local law. Both in its title and body, its words of classification according to population are applicable to all cities which now do or in the future may fall within these specifications.

4. ———: ———: **Fifth Class of Cities.** The said act does not alter the preexisting classification of a city adopting it as one of the third class, but leaves it, and all other cities which may adopt its provisions, in the same class in which they belonged prior to its enactment. It merely gives to them, for purposes of administration, similar governmental powers and functions, and expressly provides that all these new methods

of administration may be surrendered and those which such cities formerly had may be resumed, at any time, at the option of the voters. It does not create a fifth class of cities.

5. **COMMISSION FORM OF GOVERNMENT: Not Sovereignties.** Municipalities which have adopted the statute providing for commission form of government and are governed by commissioners are in no sense sovereignties, and do not fall within the constitutional provisions apportioning the powers of sovereign States.

Appeal from Adair Circuit Court.—*Hon. Charles D. Stewart*, Judge.

AFFIRMED.

*A. Doneghy* for appellant.

(1) The constitutional provisions contravened by the act are as follows: "No bill . . . shall contain more than one subject, which shall be clearly expressed in the title"—Art. 4, sec. 28; "The General Assembly shall not pass any local or special law."— Sec. 53, art. 4; "The General Assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."— Sec. 7, art. 9. (2) The title of the act tells the members of the legislative body that it is an act which is to apply to all cities of the third class, and that it provides for the election of four councilmen at large in all such cities. The body of the act provides for two councilmen in cities of a certain population, three in another and four in certain others. *Expressio unius*, etc. And, in the body of the act (Sec. 2, p. 518), when it comes to provide for the number of councilmen, it reads: "Cities having a population of three thousand and less than twelve thousand shall proceed to the elec-

tion of a mayor and two councilmen;" twelve and less than twenty, mayor and three councilmen; and in cities having a population of twenty thousand and not more than thirty thousand, shall proceed to the election of a mayor and four councilmen. This section, and other sections, do not provide for cities that now have or may hereafter have a population of more than twenty and not more than thirty thousand .population. This court judicially knows that, at the time of the passage of the act, the cities of Springfield and Joplin were each cities of the third class and each contained more than thirty thousand population, and therefore the act could not operate on them and they could not, under it, elect four councilmen at large; and this court also knows that there are now no cities in this State of more than twenty and not more than thirty thousand, so that the act itself does not provide for four councilmen in any existing city that can come under its influence. The title is therefore subject to the criticism that it does not clearly express the subject, and, more, it is misleading. Cooley, Con. Lim. (5 Ed.), p. 172. (3) It is a local or special law in that it can not operate alike on all cities that adopt it. Cities of different population will be subject to different laws and restrictions. Note, Secs. 2, 4, 5, 6, 7, 8, 9, 14, 16. Murname v. St. Louis, 123 Mo. 470; Henderson v. Koenig, 168 Mo. 356. (4) It violates section seven of article nine of the Constitution in that it divides cities of the third class into different classes and thereby creates or attempts to create a prohibited class. Section one clearly indicates its purpose to be that cities that adopt it shall no longer belong to the constitutional class to which the Legislature had placed them, but "may become organized under the provisions of this act." And section 22 provides how a city that has once adopted it can throw aside its new uniform and regulations and go back and again drill in the class to which it formerly belonged or to which it may then be

entitled to go into on account of population. The following sections of the act could only apply to cities of the third class having a population of less than thirty thousand; section two makes provisions for a mayor and four councilmen in cities having more than twenty and less than thirty thousand, and no provisions which can apply to cities of the third class which have thirty thousand or more. Section five provides different election machinery according to population. Section six provides for a different law-making body according to population; section nine provides a different scale of salaries and a different mode of prescribing the salary according to population; section fourteen, in regard to civil service rules, is subject to the same criticism; section sixteen prescribes different rules as to financial statements. That the act creates, or attempts to create a forbidden class of cities, is more readily seen when we come to apply it to a city of the fourth class, for when such a city organizes under the act it ceases to operate under any of the laws of a city of the fourth class, but is, from that time forward, without ever having in the manner prescribed by statute, elected to become a city of the third class, made subject to all laws applicable to cities of the third class, not repugnant to the act, and no longer subject to the statute in regard to fourth class cities. Under the provisions of the act in question it is impossible for all cities adopting it to be governed by the same laws and be subject to the same restrictions. State ex rel. v. Borden, 164 Mo. 221; St. Louis v. Dorr, 145 Mo. 466; Owen v. Baer, 154 Mo. 434; Hall v. Sedalia, 232 Mo. 344.

*Weatherby & Frank* for respondent.

(1) The courts before pronouncing a statute unconstitutional, should be satisfied beyond a reasonable doubt of its vice, all presumptions being in favor of its

266Mo.18

constitutionality. Bank v. Clark, 252 Mo. 20; State v. Buente, 256 Mo. 227; Bledsoe v. Stallard, 250 Mo. 154; State ex rel. v. Kirby, 168 S. W. 746; Kansas City v. Land Co., 169 S. W. 62. (2) The act of the Forty-seventh General Assembly does not violate section 28 of article 4 of the Constitution which provides, "No bill . . . shall contain more than one subject, which shall be clearly expressed in the title." State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163; State ex rel. v. County Court, 128 Mo. 441; State ex rel. v. Vandiver, 222 Mo. 221; O'Brien v. Ash, 169 Mo. 299; Ex parte Loving, 178 Mo. 194. (3) The act in question does not violate section 53 of article 4 of the Constitution which provides, "The General Assembly shall not pass any local or special law." State ex rel. v. Pond, 93 Mo. 606; Ex parte Swan, 96 Mo. 44; State v. Moore, 107 Mo. 78; Cole v. Dorr, 22 L. R. A. (N. S.) 534; State ex rel. v. Mankato, 41 L. R. A. (N. S.) 111; State ex rel. v. Clayton, 226 Mo. 292. (4) The act in question does not violate section 7 of article 9 of the Constitution which provides, "The General Assembly shall provide by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four and the power of each class shall be defined by general laws so that all such municipal corporations of the same class shall possess the same powers and be subject to the same laws." Laws 1913, sec. 1, p. 517; State ex rel. v. Clayton, 226 Mo. 292. (5) All cities and towns in the State, containing 3,000 and less than 30,000 inhabitants which shall elect to be a city of the third class, shall be cities of the third class. R. S. 1909, secs. 8526, 8529. (6) Any third class city in the State of Missouri, or any city acting under a special charter, although they may have a population of more than 30,000 inhabitants, nevertheless remain third class cities until they elect otherwise.

BOND, J.—This is a suit for salary alleged to be due plaintiff as marshal of the city of Kirksville. The defendant, the city of Kirksville, answered that on the 10th of March, 1914, at an election duly held, it adopted the provisions of the act of the General Assembly (Laws 1913, p. 517) permitting cities of the third class and others to organize thereunder and to exercise the powers of government therein specified; that it became duly organized and officered as provided in said act and vested with all the powers and privileges granted thereby; that in the exercise of such powers and duties its mayor and councilmen passed a resolution on April 13, 1914, terminating the office of plaintiff as marshal of said city and elected another in his place who has since discharged the duties of the office.

Plaintiff replied that said act providing for such organization was void under section 53, article 4, of the Constitution in that it was a local or special law, and also under section 7, article 9, of the Constitution in that it provided for more than four classes of cities.

Upon the issues joined the cause was submitted to the court upon the following agreed statement of facts:

"For the purpose of dispensing with the introduction of evidence in the trial of the above cause, it is agreed, subject to the objection of either party hereto for incompetency, that the plaintiff was on the —— day of April, 1913, duly elected and commissioned to the office of marshal for a term of two years and entered upon the discharge of the duties of said office and discharged the duties thereof until the 13th day of April, 1914; that on the —— day of June, 1892, said city of Kirksville was organized as a city of the third class, and divided into four wards; that said city has refused to pay plaintiff the salary of the marshal's office ever since the 13th day of April, 1914; that ordinance No. 1862 was passed by the council and ap-

proved by the mayor prior to the election and commission of plaintiff and was at said time in full force and effect, and provided a salary of fifty dollars per month; that on the 10th day of March, 1914, pursuant to a petition of the electors of said city of Kirksville equal in number to more than twenty-five per centum of the votes cast for all candidates for mayor at the last preceding city election of said city prior to the filing of said petition, and pursuant to a proclamation calling aforesaid special election, a special election was duly had and held on said 10th day of March, 1914, at which special election the terms and provisions of an act of the Forty-seventh General Assembly of the State of Missouri, entitled, 'An act providing for an alternative form of government for cities of the third class and cities now having or that may hereafter have a population entitling them to become cities of the third class, and certain cities under special charters, making provisions for the election of a mayor and four councilmen at large, for a method of nominating candidates for office at a primary election, for electing candidates selected at such primary election at a general election, providing for the appointment of various city officers, and providing for the initiative and referendum in municipal legislation, and further providing for the recall of any elective officer, which shall become effective only in the event of an adoption of the provisions of this act by the vote of the electors of any of said cities, and providing for the renunciation of the provisions of this act when once adopted, with an emergency clause,' approved March 28, 1913, and found in the Laws of Missouri of 1913, at pages 517 to 533 both inclusive, was by said city of Kirksville duly adopted and said city organized under the provisions of said act; that return of said election was duly made; thereafter on the 7th day of April, 1914, at a general election duly had and held in said city one

Charles E. Still was elected mayor of said city and Thomas Rainey and Rapheal M. Miller were elected councilmen at large of said city; that return of said election was duly made and thereupon said last-named mayor and councilmen at large of said city took the oath of office and were commissioned as such officers and entered upon the discharge of the duties of their respective offices; and at all times since they have been the only persons holding or claiming to hold the office of mayor and councilmen in said city and at all said times have discharged the duties of said offices; that on the 13th day of April, 1914, aforesaid mayor and council of said city, by a resolution, entitled, 'A resolution terminating the term of office of certain city officials in the city of Kirksville, Missouri,' passed and adopted on the 13th day of April, 1914, and signed and approved by the mayor on said date, declared by aforesaid resolution that the term of office of plaintiff as marshal of said city of Kirksville ceased and determined on said 13th day of April, 1914; thereafter and on said 13th day of April, 1914, the mayor and council aforesaid by unanimous vote of said mayor and council elected one George M. Malone to the office of city marshal; that said George M. Malone took the oath of office prescribed by statute and was duly commissioned as marshal of said city by the mayor of said city and did duly file a bond as required by statute, which said bond was by the mayor of said city approved, and said George M. Malone ever since said last-named date has performed all the duties of the office of marshal of said city and has received the salary provided by ordinance therefor.''

The trial court found the issues for defendant and against the plaintiff, from which the plaintiff has appealed to this court.

## I.

The plaintiff (appellant) does not assail in this action the existence of defendant as a municipal corporation of the third class, since that status is conceded both by the pleadings and the agreed statement of facts. What the appellant seeks to recover by this suit, is the compensation which would be due him as marshal of the city of Kirksville under its incorporation as a city of the third class according to the terms of an ordinance duly enacted by it.

**Commission Form of Government: Salaries of Former Officers.**

To this demand the only defense is that appellant was legally removed from the office of marshal on April 13, 1914, by the mayor and council of said city in pursuance of the powers vested in them by the terms of the act of the Legislature providing for the assumption of other governmental powers after an organization as prescribed by the act. [Laws 1913, pp. 517 et seq.]

This narrows the controversy to a single inquiry, for it is agreed that respondent complied with the conditions attached in the act to the grant of powers therein specified and thereafter duly removed the appellant from the office of marshal and elected another, hence, the only question left is the constitutional validity of the act empowering respondent to terminate appellant's term of office. [Laws 1913, p. 524, sec. 10.]

Before passing on the objections of appellant to this enabling act, it is well to note that none of the objections involved a disincorporation of defendant as a municipal body, nor its right to exist as a city of the third class, and hence we are not precluded from considering such objections by the rule that the corporate existence of a municipal corporation can only be attacked by the State through its proper officers. [State ex inf. v. Fleming, 147 Mo. l. c. 12; Kansas City v.

Stegmiller, 151 Mo. 189; Burnham v. Rogers, 167 Mo. 17; Bradley v. Reppell, 133 Mo. 545; State ex rel. v. Mineral Land Co., 84 Mo. App. l. c. 39.]

## II.

The first objection to the validity of the act under review is that the title is not adequately descriptive of the body of the act.

The title is quoted *in extenso* in a former paragraph. It provided for the election of a mayor and four councilmen, and provides also for the adoption of its provisions by cities "now having or that may hereafter have a population entitling them to become cities of the third class." It is contended that the first of these provisions does not describe the contents of the bill, since although the body of the bill provides for the election of four councilen as a maximum, yet it also permits three or even two councilmen to be elected according to the popoulation of the cities adopting the act when the election shall be held. There is no merit whatever in this objection. The title expresses the full limit of the councilmen to be elected by the cities having the largest population within the prescribed limits at the time the election is held. Such a definition of the purpose of the bill fairly and reasonably embraces a provision therein for a less number of councilmen according as the population of the city, desirous of embracing the provisions of the bill, shall be less than that required for the election of the full number of councilmen mentioned in the title. If the title points to the election of *four* councilmen no one could be misled as to the provisions of a bill which provided not only for *four* but for a lesser number of councilmen.

Neither is there any force in the further contention that the body of the bill (section 2) uses words of present meaning when referring to the population

*Title to Act.*

which shall entitle certain cities to organize thereunder. A simple inspection of the language of this section discloses that it can only mean the future population which those cities shall have who are to elect two or three or four councilmen as may happen under the apportionment made by the bill. The words of this section, necessarily and of their own force, carry a future sense and meaning and are intended to be applicable to the subsequent time when cities on account of their growth in population shall be entitled to hold the elections provided for in the bill, and this conclusion is further demonstrated by 'the fact that the language of the title in referring to the holding of such elections is expressly put in the future tense.

Our conclusion is that the foregoing objection as to the title of this bill, if not trivial, is destitute of any logical or legal force, and that neither the letter nor the spirit of the Constitution (art. 4, sec. 28) was violated when this act was passed.

In the exposition of that constitutional provision it has been uniformly ruled that it only requires that the *title* shall be a "fair forecast of the contents of the bill" and its subject, so as not to mislead the lawmakers or the people. And where the subsequent provisions of the bill are within the radius of that subject, it does not violate the Constitution. [State ex rel. v. Revelle, 257 Mo. l. c. 538, and cases cited; Burge v. Railroad, 244 Mo. l. c. 91.]

## III.

The other objections are that the act under review is local and special, and that it creates a fifth class, whereas the Constitution only provides for a division of the cities of the State into four classes. [Constitution, art. 9, sec. 7; Calland v. Springfield, 264 Mo. l. c. 301.]

Special Law.

We are unable to perceive any force in either of these contentions. A glance at the terms of the act

shows that its words of classification according to popoulation, both in the title and in the body of the bill, are applicable to *any* and *all* cities which shall or may in the *future* fall within these specifications. In such cases the rule is too well settled for cavil both here and elsewhere that the act is not obnoxious to the constitutional prohibition against certain special laws. [State ex rel. v. Southern, manuscript opinion; State ex rel. v. Clayton, 226 Mo. 292; State ex rel. Hunt v. Tausick, 35 L. R. A. (N. S.) 802; State ex rel. Simpson v. Mankato, 41 L. R. A. (N. S.) 111; Munn v. Finger, 51 L. R. A. (N. S.) 631; Walker v. Spokane, 24 Am. & Eng. Ann. Cases, 994; Mayor v. State, 35 Am. & Eng. Ann. Cases, 1213.]

As to the objection that the act creates a fifth class of cities, the answer is, that the bill does not alter the preexisting classification of the city of Kirksville as one of the third class, but leaves it, and all other cities which shall adopt its provisions, in the same class to which they theretofore belonged. It merely gives to them for purposes of administration, similar governmental powers and functions, and expressly provides that all these new methods of administration may be surrendered and those which such cities formerly had may be resumed at any time at the option of the voters.

**Fifth Class of Cities.**

Indeed all these contentions as to constitutionality made by appellant in the present case were ruled adversely when the same points were made against the act of the General Assembly whereunder the city of St. Joseph was permitted to' organize as a city of the first class. In that case a mandamus to compel the city to proceed under its former charter as a city of the second class was sought on the theory that the new act (approved January 14, 1909) was unconstitutional in the several respects which are now urged against the bill under review. But the court held after a clear and

careful analysis of the grounds of attack in that case, which were similar to those relied upon in this case, that there was no merit in any of the contentions and denied the writ of mandamus. [State ex rel. v. Clayton, 226 Mo. 292.]

## IV.

. The cases cited above from other jurisdictions and the terms of the act under review and those of a similar act passed in 1913 and applicable **Commission Form of Government In General.** to cities of the second class (Laws 1913, p. 453, sec. 49) demonstrate that the State of Missouri is only following the trend of those measures of reform previously enacted in the leading States of the middle west and in other portions of the country for the eradication of inefficiency in the working of their governmental agencies. The object of this and similar legislation is to give the cities of the State an opportunity to adopt what is termed the commission form of government, the chief excellence of which is the concentration of municipal power into the hands of a few men or responsible agents who are usually put at the head of the several departments necessary to the conduct of the business of cities. The general plan was early put into operation at Galveston, Texas (after the storm of 1900), and has spread over the country with remarkable rapidity. Up to the present time the agents have not exceeded five and are termed commissioners. They are selected by means of a short ballot and are usually subject to a recall. The union in their hands of quasi-judicial as well as administrative authority does not violate the constitutions of the various States, since it has been uniformly held that the municipalities so governed are not in any sense sovereignties and hence do not fall within the provisions of the constitutions which apportion the powers of sovereign States. The

salutary measures enacted by the Legislature of this State on this subject reflect credit on that body and must result in the protection of urban life and the promotion of civic betterment.

The act under review was devised and in our opinion will contribute to these ends and was enacted under full constitutional warrant. The learned trial court reached that conclusion and the judgment is affirmed. All concur except *Woodson, C. J.,* who dissents.