STATE ex rel. THOMPSON et al.

v.

ROBERTS et al.

No. 22129.

Kansas City Court of Appeals.

Missouri.

April 5, 1954.

J. Dorr Ewing, Montgomery L. Wilson, Maryville, for appellants.

James P. Dalton, Maryville, for respondents.

## PER CURIAM.

The purpose of this proceeding in mandamus, instituted in the Circuit Court of Nodaway County, is to compel the appellants as officials and councilmen of the City of Maryville, to canvass the votes cast in a special election held in April, 1953, and to certify the results to the secretary of state and the county clerk, and to call another special election for the purpose of electing city officials under the city manager form of government, the proposition voted upon at the special election. After separate alternative motions to quash the alternative writ of mandamus or to strike portions of the writ, and answers, a hearing was had and the circuit court made the following "finding": "Finding for Relator. Alternative writ of mandamus made absolute as to Clyde Roberts, Charles Baird and H. B. Cushman and quashed as to Zena Hainey." Thereafter the appellants, Roberts, the mayor, and Baird, a councilman, filed their motion for a new trial, which was overruled, and they prosecuted an appeal to the supreme court on the ground that a constitutional question was involved. That court held that no constitutional question was properly preserved and transferred the cause to this court.

The Maryville Civic Improvement Coordinating Council, consisting of representatives of a large number of civic "service clubs", sponsored the election. This proceeding was instituted by "Gene Thompson, the duly elected, qualified and acting prosecuting attorney within and for the county of Nodaway and State of Missouri, and Gene Thompson, as a duly qualified elector, voter and taxpayer of the city of Maryville". Among other things, the petition for mandamus alleges that the city of Maryville in 1919, had a population of more than 3,000 and less than 10,000, entitling it to become a city of the third class, and that at a special election held in the year 1919, the city adopted the commission form of government, Section 78.020 et seq. RSMo 1949, V.A.M.S., and had been operating as such until the election in April, 1953; that on March 4, 1953, a petition bearing the names of more than 25% of the qualified voters of the city of Maryville was presented to the mayor and the city council of said city, requesting that there be submitted to the voters of said city a proposition of organizing the government of Maryville under Sections 78.430 to 78.640, RSMo 1949, V.A.M.S., such sections being the alternative form of government known as the City Manager Form of Government; that in compliance therewith a special election was duly called and held

on April 21, 1953, and that a majority of the votes cast were in favor of organizing under said sections; that it became the mandatory duty of respondents' Roberts, the mayor, Baird and Cushman, councilmen, and Hainey, the city clerk, to canvass the votes cast in said election and declare the results thereof and to transmit to the secretary of state and to the county clerk of Nodaway County, duplicate copies of a certificate stating that such proposition was adopted, and to call a special election to be held within 60 days after the date of the adoption of the city manager plan for the purpose of electing councilmen under the city manager form of government; that the respondents refused to canvass the results of said special election and refused to certify the results thereof to the secretary of state and the county clerk, and to call a special election to be held within 60 days for the purpose of electing councilmen under the city manager plan; that an alternative writ of mandamus be issued directed to the respondents to show cause why they should not be compelled to perform the above mandatory duty. The alternative writ was issued stating the essential allegations of the petition.

The respondents filed motion to quash the alternative writ for the reason it did not state facts which would entitle relators to the relief prayed. There was also filed a motion to strike certain allegations contained in the alternative writ. These motions were overruled, and respondents' answer admits most of the allegations of the petition, but alleges that in 1880, the city of Maryville elected to become a city of the "fourth class" and that it had so remained until the election in 1919, at which time it elected to adopt the commission form of government, as provided by Section 78.020 et seq., supra; that prior to 1919, and at all times subsequent thereto until the election of 1953, Maryville has been a city with a population of more than 3,000 and less than 10,000. Other allegations of the answer and assignments in the briefs raise the specific question whether, by the 1919 election to adopt the commission form of government, Maryville thereby became a city of the *third class;* that if it did not become a city of the *third class,* then the election of 1953, to adopt the city manager form of government, was illegal and void because only cities of the *third class* may adopt that form of government as provided in Section 78.430 et seq.

There is no conflict in the evidence. It is admitted that in 1880 Maryville elected to become a city of the fourth class; that the records of the city do not disclose any election subsequent thereto affecting its classification until 1919; that at that time and at all times since, the city has had a population in excess of 3,000 and less than 10,000; that the formalities of calling the 1919 election were regular; that the proposition submitted to the voters was, "Shall the proposition to organize the city of Maryville under Ch. —— (now Sections 78.010 to 78.420, RSMo 1949 [V.A.M.S.]), be adopted?"; that a majority of the voters favored such adoption and all necessary steps were taken to canvass and publish the result of the election and file notice thereof with the secretary of state and the county clerk; that Maryville has had that form of city government since said election; that the election held in April, 1953, was regularly called; that the question submitted by the official ballot was, "Shall the city of Maryville, Missouri, organize under Sections 78.430 to 78.640, RSMo 1949, [V.A.M.S.] providing for the City Manager Form of City Government?"; that notice election was duly published and all necessary ordinances were duly passed to carry the same into effect; that a majority of the votes cast favored the adoption of such plan; that the respondents refused to canvass and publish the vote of said election for the reason that "if Maryville is still a city of the fourth class it cannot regularly adopt the City Manager Form of Government and an election held to adopt that form of government would be illegal".

The first point urged by appellants is that "the alternative writ of mandamus,

being directed to individuals instead of to those persons in their official capacity, is a fatal defect of parties", and the court should have sustained their motion to quash the writ. The record discloses that at the conclusion of the evidence, relators requested permission to amend the caption of the petition and the alternative writ so as to designate Roberts as mayor, Baird and Cushman as councilmen, and Hainey as city clerk. Attorneys for appellants consented to such amendment and the same was made. The body of the petition had described the appellants in their official capacity. The appellants amended their answer in the same manner. Consequently, there is no merit in the contention that the appellants were sued as individuals instead of in their official capacity.

The principal controversy between the parties is what effect, if any, the election in 1919 had on the *classification* of Maryville. Appellants contend that a city of the fourth class, *with a population entitling it to become a city of the third class*, does not become a city of the *third class* by electing to adopt the Commission Form of Government, as provided in Section 78.020 et seq., but remains a city of the *fourth class* and as such cannot adopt the City Manager Form of Government, as provided in Section 78.430 et seq. Consequently, the 1953 election was illegal and they cannot be compelled, by mandamus, to canvass the votes and publish the result. The respondents (relators) take the contrary view and argue that a city of the *fourth class, with a population entitling it to become a city of the third class*, by adopting the Commission Form of Government thereby becomes a city of the *third class* and is entitled to adopt the City Manager Form of Government, and that the appellants can be compelled to canvass and publish the returns.

Section 78.020 provides: "That any city of the third class, including any such city acting under special charter *or any city now having or which may hereafter have a population entitling them to become cities of the third class,* may become organ-

ized as a city under the provisions of sections 78.010 to 78.420 (the Commission Form of Government) by proceeding as herein provided, * * *." (Italics ours.) It is conceded that, at the time of the election in 1919, Maryville had a population *entitling it to become a city of the third class*. Thus it clearly appears, by the plain language of this section, that Maryville could adopt the *Commission Form of Government* because *it had a population which would entitle it to become a city of the third class*.

The question which perplexes the parties to this action is what effect, if any, did the election of 1919 have on the *classification* of Maryville?

In discussing the question whether the adoption of the Commission Form of Government affected the *classification* of a city, the Supreme Court, in Barnes v. City of Kirksville, 266 Mo. 270, 281, 180 S.W. 545, 547, said: "as to the objection that the act creates a fifth class of cities, the answer is that the bill does not *alter the pre-existing classification* of the city of Kirksville as one of the third class, but leaves it, *and all other cities which shall adopt its provisions, in the same class to which they theretofore belonged. It merely gives to them, for purposes of administration, similar governmental powers and functions,* and expressly provides that all these new methods of administration may be surrendered, and those which such cities formerly had may be resumed, at any time at the option of the voters." (Italics ours.) The court was discussing an Act passed by the General Assembly and found in Laws of 1913, page 517, and which is the same as Sections 78.010 to 78.420, with minor amendments which are not important on the question at issue. In construing this Act, the court highly praised its purposes and stated, 266 Mo. 282, 180 S.W. 548: "The object of this and similar legislation is to give the cities of the state an opportunity to adopt what is termed the commission form of government, the chief excellence of which is the concentration of municipal power into the hands of a few men or

responsible agents who are usually put at the head of the several departments necessary to the conduct of the business of cities. * * * The salutary measures enacted by the Legislature of this state on this subject reflect credit on that body and must result in the protection of urban life and the promotion of civic betterment. The act under review was devised and in our opinion will contribute to these ends, and was enacted under full constitutional warrant."

■ It seems clear to us that this decision definitely settles the question that the *classification* of a city is not changed by merely adopting the commission form of government, Sections 78.010 to 78.420. It only affects the governmental powers and functions of such a city for the purpose of administration.

We now consider the question whether Maryville, *having a population entitling it to become a city of the third class,* can adopt the city manager form of government under Section 78.430 et seq. That section says that "Any city of the third class, or any city operating under a special charter with a population entitling it to become a city of the third class, may become organized under the provisions of sections 78.430 to 78.640 * * *." Literally construed, the quoted part of Section 78.430 does not include within its provisions any city having a population entitling it to become a city of the third class but not operating under a special charter. Was that the intent of the legislature? The city manager form of government provided in Section 78.430 et seq. was enacted in 1921 and appears in Session Acts of that year at page 486. The title of the Act reads: "An Act providing for an optional law for cities of the third class *and cities with a population entitling them to become cities of the third class,* and making provisions for what is generally known as the city management form of city government, * * *." (Italics ours.)

■ It is obvious that the title and the quoted part of the body of the Act are not literally identical. In such circumstances it has been held that "Under our Constitution the Title of a statute is necessarily a part thereof, and is to be considered in construction." A. J. Meyer & Co. v. Unemployment Comp. Commission, 348 Mo. 147, 152 S.W.2d 184, 189. With this rule in mind, it seems a reasonable and logical conclusion, in consideration of the expressed intent of the legislature in the title of the Act of 1921, and considering the provisions of the Act of 1913, together with the construction by the Supreme Court of the 1913 Act and similar legislation, that the intent of the legislature was to include in the 1921 Act *all cities of this state having a population entitling them to be or become cities of the third class,* whether they were operating under a special charter or not.

This conclusion is borne out by certain provisions of Sections 78.440, 78.450 and 78.570. In effect, these sections provide that a city adopting the city manager form of government is still subject to all laws governing it under its former organization which are not inconsistent with the Act; that the city council shall have all the powers that the city council and mayor had prior to the organization under this plan; and that any city adopting this plan may abandon the same after six years if a majority of the voters so desire, and said city shall resume the form of government it abandoned when it adopted the city manager government. These are substantially the same provisions found in the 1913 Act (commission form of government) and discussed by the court in Barnes v. City of Kirksville, supra.

As stated above, the adoption of the city manager form of government merely affects the governmental powers and functions of a city for the purpose of administration and does not change its classification. But the right to adopt this form of organization is limited to cities of the third class or *cities having a population entitling them to become cities of the third class.*

We are not unmindful of certain language in opinions in two cases in which the

city of Maryville was a party. These cases are Hubbel v. Maryville, 85 Mo.App. 165, 167, and City of Maryville v. Cushman, 363 Mo. 87, 249 S.W.2d 347, 350. In the Hubbel case, this court said: "* * * we will take judicial notice of the powers and duties of the city of Maryville under the law * * *;" citing what is now Section 77.010. It is evident the court was taking judicial notice of the *powers and duties* of the city of Maryville and not taking judicial notice that it was a city of the third class. In the Cushman case, the court said, 249 S.W.2d 350: "Maryville is a city of the third class and has owned and operated its sewage system and its waterworks for many years." However, the court had under consideration the constitutionality of an Act of the General Assembly of 1951, found at page 639 et seq., which Act applies to all "cities, towns and villages in this state * * *", without regard to classification, population or location. It was held constitutional on that ground. The question whether Maryville was a *city of the third class* was not in issue. We do not believe that the last two cited cases would justify us in taking judicial notice that Maryville is a city of the third class.

It follows from what we have said that, even though Maryville has never taken any formal steps to declare itself a city of the third class, nevertheless, having a population entitling it to become a *city of the third class*, it had authority to adopt the managerial form of government under Section 78.430 et seq., as it did in the election of 1953. Therefore, it was the plain duty of the city officials (respondents) to canvass the votes in that election and to certify the results to the secretary of state and county clerk, and thereafter to call a special election for the purpose of electing city officials under the city managerial form of government.

The judgment is affirmed.

All concur.