THE STATE ex rel. HALSEY v. ALVA P. CLAY-
TON, Mayor, et al., Officers of CITY OF ST. JO-
SEPH.

In Banc, March 7, 1910.

1. **STATUTES: Conflicting.** Where two general statutes are in
irreconcilable conflict, the one of later date must prevail; but
if the two are susceptible of a construction that will give force
to both, they must be so construed.

2. ———: **Validity Presumed.** Where the validity of a statute
is assailed it will be upheld if it is susceptible of a construc-
tion that will render it valid.

3. ———: **Cities of First Class: Act of 1909: Sec. 5252, R. S.
1899: Irreconcilable Conflict.** Sec. 5250, R. S. 1899, found in
article 1 of chapter 91, and providing that "all cities and towns
in this State containing one hundred thousand inhabitants or
more, shall be cities of the first class," and the Act of 1909,
which expressly repeals article 2 of chapter 91, but leaves
article 1 in full force, and provides that "all cities and towns
in this State containing more than seventy-five thousand in-
habitants and less than one hundred and fifty thousand inhabi-
tants may elect to become cities of the first class in the manner
hereinafter provided," are not in irreconcilable conflict.

4. ———: ———: ———: ———: **Manner of Organization:
Census.** The Act of 1909 does not say that no city except it be
within the limits of the designated population (between 75,000
and 150,000) shall become a city of the first class, but it says that
only cities between those limits may organize as a city of the
first class under the provisions of the act, and it can do so only
when the last state or national census shows it has the requisite
population, and then only by a vote of the people. All cities
of 100,000 or more are still cities of the first class, and one of
them proposing to so organize may ascertain that it has the
requisite population by a census of its own, as well as by the
last state or national census, and it may determine to so or-
ganize with or without an election. These are material dif-
ferences and the General Assembly had power to prescribe these
different terms, because not inhibited from doing so by the
Constitution.

5. ———: ———: ———: **Five Classes.** Nor can it be held
that the Act of 1909 left all cities having more than 150,000
population without classification, or created a fifth class of

cities in contravention of the Constitution. All cities in excess of that population (St. Louis and Kansas City) now have special charters of their own, formed and adopted in pursuance to statutes and the Constitution, and the act is not to be held unconstitutional because the Legislature did not make provision for the organization as cities of the first class of cities which may hereafter have more than 150,000 inhabitants. That may hereafter be done. Besides, article 1 of chapter 91, yet in force, declares all cities having a population of 100,000 or more are cities of the first class.

6. ———: ———: ———: **Different Powers.** The charter and municipal governmental powers and duties given by the Act of 1909 are not limited to cities having between 75,000 and 150,000 inhabitants, but apply to all cities of the first class, including those and all others having 100,000 inhabitants or more; and hence the act does not violate the constitutional mandate that all cities "of the same class shall possess the same powers and be subject to the same restrictions." It only provides a different method or terms of organization as a city of the first class, by those having between seventy-five and one hundred and fifty thousand inhabitants, and by those having one hundred thousand or more.

7. ———: **Title: Reference to Chapter.** Where an act, either in its title or body, makes mention by title and number of a particular chapter and article of the Revised Statutes, the reference is sufficient to indicate the subject of the Revised Statutes mentioned. "An act to repeal all of article 2 of chapter 91 of the Revised Statutes of 1899, relating to cities of the first class, and to enact a new article to be known as article 2, chapter 91," is a sufficient title to the Act of 1909, which repealed the article referring to cities of the first class, and enacted a new article referring to cities of the same class. The fact that the act makes provision by which the only city of the second class in the State could organize as a city of the first class and makes no reference to cities of the second class except to provide how they may, when they attain the requisite population, become cities of the first class, does not render the title insufficient.

8. ———: **Special Law.** While the Act of 1909 applied only to St. Joseph at the date of its enactment, yet if it remains a law it will apply with equal force to other cities when they attain the number of inhabitants indicated by it, and is not, therefore, a special or local law.

## Mandamus.

Writ denied.

*K. B. Randolph* and *Chas. F. Strop* for relators.

(1) The Act of 1909 by necessary implication repeals sec. 5252, R. S. 1899. In express terms it repeals article 2, of chapter 91, which article contains the law theretofore in force governing cities of the first class. The act enacts in addition an entire new scheme of government for cities of the first class, and at the same time provides what cities may become cities of the first class and also provides the procedure therefor, so that said Act of 1909 is full and complete both as to the powers of cities of the first class and also as to the classification and method of organization. Section 5252 provides that cities containing one hundred thousand inhabitants, or more, shall be cities of the first class. Section 2 of the Acts of 1909 provides that all cities containing more than seventy-five thousand and less than one hundred and fifty thousand inhabitants may elect to become cities of the first class, etc. Therefore it is contended by petitioner that section 5252 is repealed by necessary implication. ''Where subsequent statutes are passed revising the whole matter of former ones, and evidently intended as substitutes for them, in such cases the latter act, although it contains no words to that effect, must in the principles of the law, as well as in reason and common sense, operate to repeal the former.'' Meriwether v. Love, 167 Mo. 521; Yall v. Gillihan, 187 Mo. 405; Smith v. State, 14 Mo. 115. If petitioner is correct in his contention that section 5252 is repealed by necessary implication by the Act of 1909 it then clearly follows that the Act of 1909 is unconstitutional because in conflict with section 7 of article 9 of the Constitution, for the reason that the cities of this State which now have or may hereafter have a population of one hundred and fifty thousand and over are not classified, and no general laws or scheme of government for such cities has been provided, and hence there has been no general classification of cities of this State within

four classes. (2) But if section 5252 is not repealed by implication, then the Act is in conflict with section 7 of article 9 of the Constitution in this: It creates a fifth class of cities containing not less than seventy-five thousand nor more than one hundred and fifty thousand population. It takes a part of the cities within the provisions of section 5252, defining cities of the first class, and a part of the cities within the provisions of section 5253, defining cities of the second class, and carves out a new and additional class from the two classes just mentioned. It also creates a class of cities which are compelled to hold an election in September, 1909, that is, only such cities of the second class as have already attained a population of seventy-five thousand but have not exceeded one hundred and fifty thousand population, so that cities of the second class are subdivided as follows: a. Those having more than thirty thousand and less than seventy-five thousand inhabitants. These remain in the second class, undisturbed. b. Those now having seventy-five thousand and less than one hundred and fifty thousand population. These are compelled to hold an election in September, 1909. c. Those having more than one hundred and fifty thousand population but which have not elected to become cities of the first class. Cities of the first class are also subdivided as follows: a. Those containing more than one hundred thousand inhabitants. b. Those having seventy-five thousand and not more than one hundred and fifty thousand inhabitants. c. Those having more than one hundred and fifty thousand inhabitants. Those cities of the first class "a" and "c" have now, since the repeal of article 2, chapter 91, no organic law, and are left with no alternative except to frame their own charters under section 16, article 9, of the Constitution. St. Louis v. Dorr, 145 Mo. 466; Owen v. Baer, 154 Mo. 434; Murnane v. St. Louis, 123 Mo. 479; State ex inf. v. Borden, 164 Mo. 221. (3) The said act is in con-

flict with first and twelfth clauses of section 53 of article 4 of the Constitution. It is a special law. It was intended to apply, and does apply, only to St. Joseph. There is no other city in the State to which it could apply, and it changes its charter. State ex inf. v. Borden, 164 Mo. 221; State ex rel. v. Jackson County, 89 Mo. 239; State ex rel. v. Hermann, 75 Mo. 340; Kansas City ex rel. v. Scarritt, 127 Mo. 642. (4) The said Act also conflicts with section 23 of article 4 of the Constitution. Said section provides that "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title." Said act by its title purports to legislate solely for cities of the first class. By reference to the various sections, and particularly section 3, of the Act, it becomes apparent that the Act legislates for cities of the second class and even goes so far as to compel them, whether willing or unwilling, to hold an election in September, 1909, and also legislates with reference to the classification of cities; which is not all embraced in the title. State ex inf. v. Borden, supra. (5) In the foregoing parts of this brief we have cited the authorities which have seemed to us to be directly in point on the issues of law involved. There are many other expressions of this court showing the trend of authority on the constitutional questions involved in this controversy, and we here present a few of them. State ex rel. v. Herrmann, 75 Mo. 340; Rutherford v. Heddens, 82 Mo. 388; State ex rel. v. Pond, 93 Mo. 641; State ex rel. v. Miller, 100 Mo. 439; Dunne v. Railroad, 131 Mo. 5; State v. Walsh, 136 Mo. 405.

*Culver, Phillips & Spencer, Vinton Pike* and *W. B. Norris* for respondents.

(1) "A statute is repealed by implication whenever it becomes apparent from subsequent legislation that the Legislature does not intend the earlier act to remain in force, and the converse of this proposition

is that no statute will operate as an implied repeal of an earlier statute, if it appears that the Legislature did not intend it to so operate." 26 Am. and Eng. Ency. Law (2 Ed.), 720; Manker v. Faulhauber, 94 Mo. 439; Evans v. McFarland, 186 Mo. 723; State ex rel. v. Walbridge, 119 Mo. 383; Albany v. Gilbert, 144 Mo. 233. (2) The Legislature did not intend section 2 of the Act of 1909 as a substitute for section 5252, or that the latter should be abrogated. (a) Section 5252 is a part of article one of chapter 91, R. S. 1899, which has to do solely with the classification of cities. Article two, R. S. 1899, has to do solely with the charter of cities of the first class. By enacting the Act of 1909 it is evident that the Legislature did not intend to repeal any of the sections of article one, but intended only to supply a new charter in place of the charter theretofore provided by article two for cities of the first class; that is, it intended to repeal article two and enact another in lieu thereof. That such was the intention of the Legislature is made manifest by the title of the new act, and by the express declaration in the first section of the act itself. Evans v. McFarland, 186 Mo. 724; State v. Morrow, 26 Mo. 141. (b) The same Legislature that passed the Act of 1909 at the same session re-enacted section 5252 by its revision bill. To the ordinary mind this is strong, if not conclusive, evidence that the Legislature did not intend section 2 of the Act of 1909 to abrogate, or be a substitute for, section 5252. If so, the re-enactment of section 5252 was an idle ceremony. 26 Am. and Eng. Enc. Law (2 Ed.), p. 736. (c) The Act of 1909 bears evidence on its face that the Legislature recognized that there may be cities of the first class other than those "containing more than 75,000 and less than 150,000 inhabitants [which] may elect to become cities of the first class," as provided in section 2 of the Act of 1909. (3) Section 5252 and section 2, Act of 1909, are not "irreconcilably in conflict," so that both cannot

stand. In order to ascertain the meaning of section 5252 it must be read with sections 5257 and 5262. Section 2 of the Act of 1909 in no way conflicts with that law; it is simply auxiliary to it. It might be added thereto as a proviso, and the result is one harmonious whole. (4) The Act of 1909 does not create a fifth class of cities.

VALLIANT, C. J.—The city of St. Joseph is organized as a city of the second class, but having now a population of more than 100,000 it is entitled to organize as a city of the first class. It has taken the preliminary steps to attain that class and is about to take the final step, that is, hold an election for officers to govern it as a city of the first class. Relator asks a writ of mandamus to compel the officers of the city to hold an election for city officers as a city of the second class under the charter under which it has hitherto existed and now exists.

Relator bases his application on the proposition that the act of the General Assembly entitled, "An act to repeal all of article 2 of chapter 91 of the Revised Statutes of Missouri, 1899, relating to cities of the first class, and to enact a new article to be known as article 2, chapter 91," approved June 14, 1909, under which the city officials are proceeding, is unconstitutional, in the following particulars: first, it creates a new and fifth class of cities in violation of section 7, article 9, which limits the classes to four; second, that under it all cities of the same class do not possess the same powers and are not subject to the same restriction; third, it further violates that section in that by compelling the city to hold an election to determine the question it takes away from the city of St. Joseph the power to determine for itself whether it shall become a city of the first or remain a city of the second class; fourth, it deprives all existing cities of the first class of any laws governing them; fifth,

it deprives all cities which now have or hereafter may
have a population of 150,000 or more of coming in un-
der the class of cities of the first class; sixth, it fails
to classify all cities as the Constitution requires; sev-
enth, in dealing with cities of both first and second
classes it contains more than one subject and that sub-
ject is not clearly defined in the title, in the face of
section 28, article 4; eighth, it violates section 53, ar-
ticle 4, in that it is a local and special law intended to
apply to St. Joseph only, that being the only city in
the State having more than 75,000 and less than 150,-
000 inhabitants.

On the filing of the petition of relator an alterna-
tive writ of mandamus issued to which on the return
day respondents filed what they call a demurrer which
we will treat as a motion to quash the writ.

I.  Section 7, article 9, of the Constitution of which
relator chiefly complains as violated, is as follows:
"The General Assembly shall provide, by general laws,
for the organization and classification of cities and
towns.  The number of such classes shall not exceed
four; and the power of each class shall be defined by
general laws, so that all such municipal corporations
of the same class shall possess the same powers and
be subject to the same restrictions.  The General As-
sembly shall also make provision by general law where-
by any city, town or village, existing by virtue of any
special or local law, may elect to become subject to,
and be governed by, the general laws relating to such
corporations."

In obedience to that section the General Assem-
bly, soon after the adoption of the Constitution of 1875,
passed an act classifying all cities and towns, making
four classes; and it also passed general laws governing
the several classes and providing how a city of one
class might advance to another class when by increase
in its population it came up to the mark.  Those laws,
with subsequent amendments, are now contained in

chapter 91, Revised Statutes 1899. That chapter is divided into 23 articles, of which article 1 and article 2 are the only ones which concern us in this case. Article 1 makes the classification and provides how cities and towns may organize under the general law to which they are respectively entitled. Section 5252, which is the first section of that article, is: "All cities and towns in this State containing one hundred thousand inhabitants or more, shall be cities of the first class." Then follow sections 5253, 5254 and 5255, declaring what shall constitute cities of the second, third and fourth classes respectively; also section 5256 relating to villages. Immediately following the sections making the classifications, is section 5257, which provides, first, how cities and towns existing under general or special law may become incorporated as cities of the class to which their population entitles them, and, second, how a city or town not incorporated may become so in its proper class. None of the sections in article 1 is expressly repealed by the Act of 1909, which in express words does repeal article 2. On the contrary article 1 is carried into the revision of 1909 and now forms a part of the same chapter of which the Act of 1909 in question is also a constituent part. We must, therefore, consider them both in force and reconcile them if they are susceptible of a construction that will uphold both. Article 2 provides a charter for the government of cities of the first class only, and the Act of 1909, which repeals it, takes its place providing a charter for cities of the first class. Section 2 of the Act of 1909 is: "All cities and towns in this State containing more than seventy-five thousand inhabitants and less than one hundred and fifty thousand inhabitants may elect to become cities of the first class in the manner hereinafter provided. In all cases, the population shall be determined by the last census taken, whether State or national."

Relator contends that section 2 of the Act of 1909, which provides that cities of more than 75,000 and less than 150,000 may become incorporated as cities of the first class, necessarily repeals section 5252, Revised Statutes 1899, which says that all cities of 100,000 inhabitants or more shall be cities of the first class; that it either attempts to create a fifth class or else it leaves out of classification all cities which now have or hereafter may have more than 150,000 people, and provides no charter for them, in either of which events it violates section 7, article 9. We recognize in those two points, taken together, a question not free from difficulty. Courts have nothing to do with the policy of a statute and are not bound to find a reason for the enactment, but it does aid in the task of construing a statute when a good reason for it appears. We are unable to conjecture the reason for the introduction in this Act of 1909 of the call for cities between 75,000 and 150,000 inhabitants. A suggestion in one of the briefs is that the purpose was to make a charter for St. Joseph alone, but if the General Assembly had St. Joseph alone in view there was no necessity for referring to cities of more than 75,000, because at the date of the Act St. Joseph had more than 100,000 inhabitants; it measured up to the requirements of section 5252 and could have organized as a city of the first class under the terms of that section. Although St. Joseph was at that time the only city in the State having more than 75,000 and less than 150,000 inhabitants, yet if the purpose was to make a charter for St. Joseph only, that purpose could have been accomplished with less difficulty by simply making the act applicable to all cities of the first class as defined in section 5252. Because, whilst St. Joseph was then the only city in the State with a population of more than 75,000 and less than 150,000, it was also the only city in the State with more than 100,000 inhabitants which was subject to classification and subject to a

general charter enacted by the General Assembly. St. Louis and Kansas City are not subject to the classification required by section 7, article 9 of the Constitution. St. Louis has its charter under sections 20, 21, 22 and 23 of article 9, and Kansas City under sections 16 and 17 of that article.

But whatever may have been the reason of the lawmakers we must take the act as we find it and interpret it according to its own language, regarding the context in which it appears; and in doing so we must bear in mind these cardinal rules of construction, *viz.*: Where two general statutes are in irreconcilable conflict the one of later date must prevail, but if the two are susceptible of a construction that will give force to both, they must be so construed. And where the validity of a statute is assailed we must uphold it if it is susceptible of a construction that will render it valid.

Does section 2 of the Act of 1909 repeal section 5252, Revised Statutes 1899? It is not claimed that it does so in express terms, but that it does so by necessary implication. Section 5252 declares that all cities having 100,000 or more inhabitants are cities of the first class and, under section 5257, which prescribes the proceedings under which cities of the various classes may organize, no city of less than 100,000 inhabitants could, before the Act of 1909, organize as a city of the first class, but section 2 of the Act of 1909 now says that cities having over 75,000 and less than 150,000 people may organize as cities of the first class. It does not say that no city except it be within those limits of population shall become a city of the first class, but it only says that cities within those limits may organize under the provisions of that act. All cities of 100,-000 or more, subject to classification, are still cities of the first class; if any difference in this respect exists between cities of 150,000 or more and those of more than 75,000 and less than 150,000, it is in the

terms on which they may effect their organization. The Act of 1909 expressly repeals all of article 2 of chapter 91, and takes, in the Revised Statutes 1909, the place of the repealed article; it, however, not only does not repeal article 1, but at the same session of the General Assembly that article was retained as article 1 of the corresponding chapter in the Revised Statutes of 1909. [Chap. 84, R. S. 1909, entitled "Municipal Corporations."] The repealed article 2 of chapter 91 related only to matters of charter and government of cities of the first class; it did not contain provisions for the organization of such cities. Those provisions were contained in article 1, and they were left in full force. But the Act of 1909, besides providing a charter and matters of government for all cities of the first class, provides also how cities of more than 75,000 and less than 150,000 may become incorporated in that class. A material difference between the provisions of article 1 and those of the Act of 1909, in this particular is, that under the former, the fact that the city proposing to organize as a city of the first class possesses the necessary population may be established not only by the last State or national census, but it might be established also by a census taken by the city itself, whereas under the Act of 1909 the fact can be established only by a census taken by the State or national government. There is another difference between the requirements of the Act of 1909 respecting the organization of cities of more than 75,000 and less than 150,000, and those of article 1 which covers all cities, and that is, in section 2 of the Act of 1909 all cities of the second class organized either under the general or a special charter at the date of the Act, are required to hold a special election on a certain day to decide whether or not they will organize as cities of the first class, whereas all other cities of a population entitling them to come into the first class are not compelled to hold such an elec-

tion but may or may not do so as they desire. This compulsory feature of the act is one of the complaints of relator against it, but there is nothing in the Constitution to forbid the General Assembly making such distinction based on the fact of difference in population. The General Assembly is the supreme lawmaker of the State, except as the Constitution limits its authority. A city existing in one class has no constitutional right to continue in that class; it may be even compelled against its will to go into a higher class if the General Assembly so enacts, and the lawmaker may say that cities within certain limits as to population shall pursue one course, while those not within those limits may pursue another course, to come into the same class, but when they have come into the class then section 7, article 9, requires that all in the class shall have the same powers and be subject to the same restrictions. In this instance the General Assembly has not gone so far as it might have gone. It has required the city to hold an election, but it has left it to the voters to say whether or not they will go into the first class; the election has been held in St. Joseph and the voters have expressed their will to organize as a city of the first class under the terms of the act. In this connection we notice the significance of the other difference mentioned, that is, ascertaining the population only by a State or national census. The General Assembly at the date of the act knew the population of every city in the State as shown by the last State or national census, but it did not, with legal certainty, know what the result of a census to be taken by the city, after the last national census, would show; therefore, it required only those cities whose population it knew to hold such an election. The Act of 1909 makes no provision for ascertaining the population of cities of over 150,000 inhabitants, or for their organization, but such provisions for such cities are contained in article 1, chapter 91. The Act of 1909 provides in

that respect only for cities of over 75,000 and less than 150,000 inhabitants, and from this fact relator argues that cities of 150,000 or more inhabitants are left out of classification, or else cities of over 75,000 and under 150,000 are created into a new and fifth class.

Whilst the Constitution contemplates that all cities in the State shall be classified except those which become organized under sections 16 and 17, article 9, and the city of St. Louis, yet we would not feel justified in holding that the General Assembly in 1909 failed to perform the whole duty required of it by section 7, article 9, even if it had failed to provide by general laws for the organization and classification of cities having over 150,000 inhabitants, because the General Assembly then well knew that there was not then in the State, or likely in many years to be, a city of over 150,000 inhabitants subject to classification; and, therefore, the General Assembly may well have put off to a more appropriate period the duty of making provision for such cities. Whilst the General Assembly has the right to look ahead and make provisions for what it may think will occur in the future, yet if it provides for what is present and what is likely within a measurable period to be, its act cannot be declared unconstitutional because it did not provide for possibilities in the remote future. But we do not think the act in question either repeals section 5252, or creates a fifth class, or leaves unprovided for, cities of over 150,-000 inhabitants. It allows cities having 75,000 or more inhabitants to come into the first class on terms a little different, as we have pointed out, from those on which cities of 100,000 or more could organize, but it leaves all cities of 100,000 or more, still cities of the first class, and allows them to organize as such under the terms provided in article 1, of chapter 91, Revised Statutes 1899, now chapter 84, Revised Statutes 1909. There is nothing in the Constitution to prohibit the Gen-

eral Assembly from prescribing terms or method of organizing for cities containing a certain number of inhabitants, and different terms and method for cities of a different number of inhabitants, although all for the same class. What the Constitution requires is: "that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions," that is, after they are incorporated they should have the same powers and be subject to the same restrictions. The Act of 1909 is not limited, in the matter of charter and municipal governmental powers and duties, to cities of the population specified in sections 2, 3 and 4 of the act, although perhaps the cities referred to in those sections could organize only as in sections 3 and 4 of that act is prescribed. But beginning with section 8, which is where the act begins to specify what powers the cities of that class shall possess and what restrictions they shall be subject to, the act applies to all cities of the first class, including of course cities of over 150,000 inhabitants.

We hold therefore that the Act of 1909 is not unconstitutional on either of the six grounds first specified by relator.

As to the seventh ground, *viz.*: that the act deals with more than one subject, that is, cities of both the first and the second class and that the subject is not clearly stated in the title, it is sufficient to say that the title shows its purpose to be taken as a part of chapter 91 of the Revised Statutes of 1899, entitled "Cities, Towns and Villages," which relates to cities of all the four classes as well as to villages. This act must not be construed alone by its own terminology, because it was not designed to stand alone. It was to take its place in and be a part of the chapter in the Revised Statutes which covers the whole legislative field of "cities, towns and villages." That chapter not only classifies all cities, subject to classification, and provides for the government of them in their respective classes,

but it also provides the legal process for the passing of cities from one class to another. Where an act of the General Assembly, either in its title or its body, makes mention by title and number of a particular chapter and article of the Revised Statutes, the reference is sufficient to indicate the subject of the Revised Statute mentioned. This act does not contain any provision for the government of cities of the second class; it relates only to cities of the first class and no reference is made to cities of the second class except to provide how they may, when they attain the requisite population, become cities of the first class. That is entirely germane to the subject of the organization and government of cities of the first class.

The eighth and last ground is that it is a local or special law designed for St. Joseph only. Although St. Joseph was, at the date of the enactment, the only city in the State as shown by the last national census with a population within the limits prescribed by section 2 of the act, yet if the act remains on the books it will apply with equal force to other cities when they attain the number of inhabitants indicated.

Our conclusion is that the act of the General Assembly entitled "An Act to repeal all of article 2 of chapter 91, of the Revised Statutes of Missouri, 1899, relating to cities of the first class, and to enact a new article, to be known as article 2, chapter 91," approved June 14, 1909, is a constitutional and valid act.

The alternative writ of mandamus is quashed and a peremptory writ denied. All concur.