Joe N. CHAFFIN, Respondent,

v.

The COUNTY OF CHRISTIAN, Thomas F. Eagleton, Attorney General, and Haskell Holman, State Auditor, Appellants.

No. 49073.

Supreme Court of Missouri,

En Banc.

Sept. 10, 1962.

Thomas F. Eagleton, Atty. Gen., Wayne W. Waldo, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

Moore, Pettit & Steinle, J. Hal Moore and Walter S. Pettit, Jr., Aurora, for respondent.

STORCKMAN, Judge.

This is a declaratory judgment action to determine the constitutionality of subdivision 2 of § 48.030, RSMo 1959, V.A.M.S., and the rights of the plaintiff thereunder. The part of the section questioned provides in substance that although otherwise qualified no county of the fourth class shall become a county of the third class until the question is submitted to the people and approved by a majority of the electors at a general election. The amount of the plaintiff's salary as treasurer of Christian County is dependent on the outcome. In addition to Christian County, the attorney general of Missouri and the state auditor are defendants. The trial court declared subdivision 2 of the statute unconstitutional in accordance with the plaintiff's contention. The defendants appealed.

■ Jurisdiction of the appeal is in this court because state officers, as such, are parties and the construction of the constitution of this state is involved. Art. V, § 3, Constitution of Missouri 1945, V.A.M.S.; Marshall v. Kansas City, Mo., 355 S.W.2d 887, 879[1].

The facts are stipulated and establish that the plaintiff began his present term as treasurer on January 1, 1959, at which time Christian County was a fourth-class county. On January 28, 1959, the defendant Haskell

Holman, acting in his capacity as state auditor, sent a letter to the plaintiff and other officials of Christian County advising them that the county had had an assessed valuation in excess of $10 million for five successive years and under the provisions of § 48.030 Christian County had changed from a fourth-class to a third-class county effective as of January 1, 1961.

Thereafter, the general assembly enacted House Bill No. 297 effective August 29, 1959, which repealed § 48.030 and enacted another section with the same number. The substantial change in the section was the addition of subdivision 2. On January 14, 1960, the defendant Holman by letter notified the plaintiff and other county officials of Christian County of the change in the law and advised them that pursuant to an opinion of the attorney general Christian County would not become a county of the third class until the new classification was approved by the voters in accordance with subdivision 2 of the new statute. A proposal to change Christian County from the fourth to the third class, submitted to the voters at the general election in November 1960, was defeated. There were 1,488 votes in favor of the proposal and 3,109 votes against it.

On December 14, 1960, plaintiff filed an "Officer's Budget Estimate" in the office of the county clerk of Christian County specifying his salary at $3,000, which would have been the salary of the treasurer of Christian County as a third-class county. The county court declined to accept this estimate and approved and filed a budget designating plaintiff's salary at $2,700, which was on the basis of Christian County being a fourth-class county. On May 1, 1961, plaintiff was paid his salary for the months of January, February, March, and April 1961, based on an annual salary of $2,700. The plaintiff submitted a bill to the county court for additional salary for these four months figured on the basis of a third-class county which bill was rejected by the county court.

In due course, the plaintiff filed suit for a declaratory judgment and the defendants filed their joint answer. A stipulation of facts was filed and the cause was submitted to the court on the pleadings and the facts stipulated. The trial court rendered its judgment on July 31, 1961, declaring that subdivision 2 of § 48.030, RSMo 1959, V.A.M.S., was unconstitutional, that Christian County became a county of the third class on January 1, 1961, and that the plaintiff was entitled to back salary as treasurer of a third-class county from January 1, 1961.

■ The defendants first contend that the amended petition should have been dismissed because the plaintiff did not plead or prove a claim upon which relief could be granted in that no justiciable controversy was shown to exist. The petition is consistent with the facts stipulated and will be treated as if amended to embrace the issues made by such facts. S.Ct. Rule 55.54, V.A.M.R.

■ Section 527.020, RSMo 1959, V.A.M.S., provides among other things that any person whose rights, status or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status or other legal relations thereunder. Since there was a bona fide dispute between the parties with respect to the constitutionality of the statute on which plaintiff's claim for compensation as county treasurer depended, a justiciable controversy existed and the plaintiff was entitled to a determination of the validity of the statute under the Declaratory Judgments Act. St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 239 S.W.2d 289; Smith v. Pettis County, 345 Mo. 839, 136 S.W.2d 282; Maxwell v. Andrew County, 347 Mo. 156, 146 S.W.2d 621. Under this assignment the appellants also assert that the evidence was insufficient to overcome the presumption of the validity of the statute and to support the judgment.

The determination of the specific constitutional questions presented renders separate treatment of this general allegation unnecessary.

In the course of implementing the 1945 Constitution, the general assembly divided the counties of the state into four classes "for the purpose of establishing organization and powers in accordance with the provisions of Section 8, Article VI". Laws 1945, pp. 1801–1802. The classification section of the act became § 48.020 of our statutes. It classifies the counties on the basis of assessed valuation as follows: Class 1. All counties having an assessed valuation of $300 million and over. Class 2. All counties having an assessed valuation of $70 million and less than $300 million. Class 3. All counties having an assessed valuation of $10 million and less than $70 million. Class 4. All counties having an assessed valuation of less than $10 million.

Another section of the same act provided that no county should be deemed as moving from a lower to a higher class or from a higher to a lower class until the assessed valuation was such as to place it in such other class for five successive years. Laws 1945, p. 1802. This became § 48.030, RSMo 1949, V.A.M.S., to which subdivision 2 was added in 1959. The pertinent portions of § 48.030, RSMo 1959, V.A.M.S., with the new provision in italics, read as follows:

"48.030. Method of determining classes. 1. For the purpose of determining the initial class of the various counties, the assessed valuations of the respective counties as set forth on pages 333 to 400 of the 'Journal of the Board of Equalization of the State of Missouri for the Year Ending December 31, 1944' shall be used. Hereafter no county shall be deemed as moving from a lower class to a higher class or from a higher class to a lower class until the assessed valuation of the county is such as to place it in the other class for five successive years. * * *

"2. *In addition to the required increase in valuation for five successive years, and the certification by the state equalizing agency, no county of the fourth class shall become a county of the third class until the question is submitted to a vote of the people at a general election, and a majority of the electors voting on the question shall vote in favor thereof. The change from one classification to another shall become effective at the beginning of the county fiscal year following the general election at which the approval of the people is obtained.*"

Subdivision 2 was the only part of the statute declared unconstitutional by the trial court. One of the grounds was that it violated § 8 of Art. VI, a new section first appearing in the 1945 Constitution, which reads as follows:

"Provision shall be made by general laws for the organization and classification of counties except as provided in this constitution. The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions. A law applicable to any county shall apply to all counties in the class to which such county belongs."

Section 7 of Art. IX of the 1875 Constitution, which provided for the classification of cities and towns, was carried over without change into the 1945 Constitution as § 15 of Art. VI. Except for the last sentence of each section, the language used in §§ 8 and 15 of Art. VI of the 1945 Constitution are very much the same. The last sentence of § 15 provides that the general assembly shall also make provision by general law whereby any city, town or village existing by virtue of any special law or local law "may elect to become subject to, and be governed by, the general laws relating to such corporations." Section 8 contains no suggestion of choice by a county of

734

the class to which it will belong. It provides instead that: "A law applicable to any county shall apply to all counties in the class to which such county belongs."

In urging that the statute does not violate § 8, the defendants rely primarily upon decisions construing § 15 of Art. VI. In State ex rel. Halsey v. Clayton, 226 Mo. 292, 126 S.W. 506, the classification statute provided that all cities having a population in excess of 100,000 should be cities of the first class. A later statute in another article provided that all second-class cities having a population between 75,000 and 150,000 should hold an election on a day specified to determine if they should become a city of the first class. St. Joseph was the only city in Missouri having a population between 75,000 and 150,000, but its population was also in excess of 100,000. The court held that the constitutional provision for the classification of cities did not prohibit the general assembly from prescribing different terms and methods of organizing for cities of different populations although they were of the same class, and that the 1909 act did not repeal the general classification statute and was not unconstitutional for any of the reasons urged including a contention that it created a fifth class of cities. In Barnes v. City of Kirksville, 266 Mo. 270, 180 S.W. 545, Kirksville had adopted the commission form of government under statutes permitting cities of the third class the choice of alternative forms of city government. The court held that the act did not alter the pre-existing classification of Kirksville and did not create a fifth class of cities but merely permitted such cities to select an alternative form of government for administrative purposes. Counties of any particular class may likewise be provided with a choice of alternative forms of government. Art. VI, § 9, 1945 Constitution. These and other cases cited construing § 15 do not involve the same sort of governmental relation or type of statute with which we are here concerned and do not deal with the distinctions in the constitutional provisions. Such cases do not control the decision of the question here presented.

Counties are legal subdivisions of the state. Art. VI, § 1. They are subdivisions of the state for governmental, political, and public purposes. Abernathy v. Dennis, 49 Mo. 468, 470; Barton County v. Walser, 47 Mo. 189, 202; Clark v. Adair County, 79 Mo. 536, 537. The intent and purpose of § 8 of Art. VI must be determined primarily from the language used and in connection with other related constitutional provisions. Prior to the adoption of the 1945 Constitution, there was no constitutional provision with respect to classification of counties or limitation upon the number of classes which the legislature might create. As a result, numerous classifications were made for different purposes. The purpose of the constitutional provision was to simplify and make more effective the organization and operation of the counties. It provides that the provisions for the organization and the classification of counties shall be by *general laws* and that the organization and powers of each class shall be defined by *general laws*.

A "class" as used in this constitutional provision denotes "a group, set, or kind marked by common attributes or a common attribute". To classify is "to group or segregate in classes that have systematic relations usually founded on common properties or characters". Webster's Third New International Dictionary. The fundamental concept is that of common attributes, common properties, or common characters. The constitutional provision limited the classes of counties to four, and the general assembly provided that the common attribute, property, or character, should be the assessed valuation of the counties subject to classification. Four classes were accordingly created as provided in § 48.020. Section 48.030 deals with the method of establishing and maintaining the classes. Initially, the counties were divided on the assessed valuation as set forth in the Journal of the

Board of Equalization of Missouri for the year ending December 31, 1944. Taking note of inevitable change and possible fluctuation in assessed valuations, the statute then provided that no county should be deemed to have moved from a lower to a higher class or from a higher to a lower class until the assessed valuation was such as to place it in the other class for five successive years. Thus far the attribute in common was preserved and the integrity of the four classes was maintained.

■ The enactment of subdivision 2 of § 48.030 added a variable that disrupted the common denominator of the classes. It added an element foreign to the concept of assessed valuation in providing that no county of the fourth class should become a county of the third class until the move was approved by the voters of the county. The defendants urge that this provision "merely establishes one additional requirement for the passage of a fourth class county to a third class county". What we are concerned with is the character and legal effect of this additional requirement. Under it, the progression of a fourth-class county no longer depends upon the general law but on a favorable vote of the county electors. An unfavorable vote puts a fourth-class county in a status or category which is no longer strictly fourth class or third class as prescribed in § 48.020. Under the new statutory provision, the common attribute of assessed valuation is no longer controlling. In this instance, Christian County has the assessed valuation of a third-class county but retains the designation and is permitted and required to exercise the powers and be subject to the restrictions of a fourth-class county. This perverts the entire scheme of classification and in effect creates an additional class of counties in violation of § 8, Art. VI, 1945 Constitution.

The inability of Christian County to fit into either the fourth or third class of counties on the common and otherwise controlling basis of assessed valuation becomes more apparent by a comparison with other counties in the third class. According to the 1961–1962 Official Manual of the State of Missouri, Christian County has a population of 12,359, an assessed valuation of $15,803,612, and is in the fourth class. On the other hand, there are nine counties which have a smaller assessed valuation than Christian County but are classified as counties of the third class, such as, Dade, population, 7,577, assessed valuation, $13,-458,342; Madison, population, 9,366, assessed valuation, $13,692,514; Mercer, population, 5,750, assessed valuation, $13,-469,198; Putnam, population, 6,999, assessed valuation, $13,845,820; St. Clair, population, 8,421, assessed valuation, $13,-227,722; Scotland, population, 6,484, assessed valuation, $14,354,094; Warren, population, 8,750, assessed valuation, $14,-641,466; Webster, population, 13,753, assessed valuation, $14,139,640; and Worth, population, 3,936, assessed valuation, $12,-801,526. The statute provides no opportunity or option for these counties to revert to the fourth class. Moniteau, Osage, and Sullivan are third-class counties which have slightly greater assessed valuations. Fifteen other third-class counties have assessed valuations greater than Christian County but considerably less than $20 million. If there are sound reasons why Christian and other counties similarly situated should remain in the fourth class, a change in the line of demarcation between the fourth and third classes will accomplish such purpose. A provision such as subdivision 2 would also raise questions as to how a reluctant fourth-class county could become a second or first-class county if its assessed valuation became such as to justify it.

Proceedings of the 1943–1944 Constitutional Convention appear to confirm our determination of the meaning and purpose of the section in question. The report of the Committee on Local Government—No. 9 of the Constitutional Convention contains this statement with respect to the section that became § 8 of Art. VI: "The provision is designed to permit a more flexible system of county government rather than

one uniform system as now required. It will permit the Legislature to formulate a more simple set-up of government for counties of relatively low valuation." File No. 11, p. 6. In presenting the section to the Constitutional Convention for perfection, Dr. William L. Bradshaw, the committee chairman, stated: "The Committee considers that the provisions for classification of counties are very important because * * * we have basically the same fundamental frame work of government in the smallest rural county and in the largest urban one. It remains, and in some cases you have too much governmental machinery, and in other cases you have to build a huge super structure on a very small foundation. We thought a provision permitting the classification of counties would enable the Legislature to work out a more suitable governmental set up for counties, various types of counties in the state. That's the purpose of the Section." Debates of the Constitutional Convention, p. 1700. In presenting the Committee's report pertaining to alternative forms of county government, which is § 9 of Art. VI, Dr. Bradshaw pointed out the relationship between §§ 8 and 9 and further stated: "The purpose of the section [9] is that different or more simplified forms of government might be devised by the Legislature and submitted for adoption to the voters in any county interested." Debates of the Constitutional Convention, p. 1628. State on inf. Taylor v. Kiburz, 357 Mo. 309, 208 S.W.2d 285, 288, in considering the force and effect of § 8 of Art. VI of the Constitution, called attention to the legislative declaration that "the classification provided in this act is the foundation upon which the whole structure of county government and laws relating thereto rests." Laws 1945, p. 1803, § 4.

The trial court further held that subdivision 2 of § 48.030 violated Art. III, § 1, of the Constitution, in that the statutory provision constituted a delegation of legislative power which empowered the electors to classify the county and that the provision was a special law in violation of Art. III, § 40, par. (21), and Art. III, § 41, of the Constitution. These assignment present substantial and interesting questions which we need not and do not decide, solely because we have held that subdivision 2 of § 48.030 is unconstitutional on the broad ground that it violated § 8 of Art. VI. Our determination of the other constitutional issues would add nothing to the holding that under the valid statutes presently existing Christian County is a county of the third class and that the plaintiff is entitled to be paid his salary as treasurer of a third-class county.

For the reasons stated, the judgment of the trial court is affirmed.

All concur.