**Vicki RUSSELL, Respondent,**

v.

**CALLAWAY COUNTY, Missouri, Honorable George H. Carrington, Clerk of the County Court of Callaway County, Missouri, and John Ashcroft, Attorney General of Missouri, Appellants,**

**and**

**Jefferson County, Missouri, Intervenor-Appellant.**

**No. 61119.**

Supreme Court of Missouri, En Banc.

Dec. 29, 1978.

C. E. Hamilton, Jr., Fulton, John D. Ashcroft, Atty. Gen., Larry Marshall, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

Terence C. Porter, Columbia, for respondent.

John W. Hammon, Asst. Pros. Atty., Hillsboro, for intervenor-appellant.

SEILER, Judge.

This case is in this court on direct appeal pursuant to Mo.Const. art. V, § 3 because it involves construction of the constitution, Mo.Const. art. VI, § 8. Specifically, we are asked to determine whether § 48.020.2, RSMo Supp.1977, violates article VI, section 8's requirement that the number of classes of counties not exceed four. Section 48.-020.2 provides that the people of a county of the second or third class may vote whether or not to move to the next higher classification of county, despite the fact that their assessed valuation would otherwise make them move automatically to the next higher class. Shortly before the date of the proposed election, respondent, a resident, taxpayer and citizen of Callaway County, filed a writ of prohibition in this court asking us to declare section 48.020.2 unconstitutional. Because of inadequate time, we denied the writ without prejudice to respondent's right to file a declaratory judgment action to test the constitutionality of the statute. Respondent did so on October 13, 1978. On October 30, 1978 the circuit court held that respondent had standing to sue and that section 48.020.2 was unconstitutional, but refused injunctive relief and

thus permitted the residents of Callaway County to vote whether or not to move from a third to a second class county. On November 7, 1978 the electorate voted to remain a third class county.

On November 22, 1978 appellants filed their notice of appeal. On November 30, 1978, following its request that it be permitted to intervene and be bound by our decision herein, we granted Jefferson County leave to intervene as an intervening appellant. The voters of Jefferson County also voted, on November 7, 1978, pursuant to § 48.020.2, not to change their county's designated classification. If the statute is unconstitutional, Jefferson County will become a first class rather than a second class county on January 1, 1979.[1]

Because of the importance of determining the validity of the statute before that date, this cause has been expedited on appeal and will be decided on the briefs without oral argument. We must determine (1) whether respondent had standing to sue for declaratory relief and (2) whether § 48.020.2 is constitutional in light of Mo.Const. art. VI, § 8. For the reasons gone into below, we determine that respondent is a proper party, that § 48.020.2 is unconstitutional because it creates more than four classes of counties, and thus that Callaway County will automatically become a second-class county, and Jefferson County a first-class county, on January 1, 1979.

## I. *Standing*

■ Appellants assert that respondent, despite her status as a resident, citizen and taxpayer of Callaway County, does not have standing to bring this cause of action because she alleges no special injury due to either the statute, § 48.020.2, or to the holding of the election, or that her tax burden will be increased as a result of the expenditure of public funds for the latter, and thus that she has no legally protectable interest at stake, citing *Spencer v. Village*

of *DeKalb,* 408 S.W.2d 78 (Mo.1966); *Moseley v. City of Mountain Grove,* 524 S.W.2d 444, 448 (Mo.App.1975); *Collins v. Vernon,* 512 S.W.2d 470, 473 (Mo.App.1974); *Glick v. Allstate Insurance Co.,* 435 S.W.2d 17, 20 (Mo.App.1968).

Appellants' reliance on these cases is misplaced. *Glick* was dismissed because it dealt with a situation in which there was no justiciable controversy and thus no specific relief could be afforded. *See Waterman v. City of Independence,* 446 S.W.2d 471, 474 (Mo.App.1969).

In *Spencer* the plaintiffs sought a declaratory judgment that an ordinance authorizing a revenue bond election, issuance and sale to finance construction of a water works system was void, 408 S.W.2d 79. In *Moseley,* plaintiffs sought an injunction against the sale or negotiation of revenue bonds authorized to be issued by vote of the electorate. 524 S.W.2d 446. In both cases the court found that, because the revenue bonds specifically provided that neither they nor the interest thereon should be paid by taxes in whole or in part, the fact that plaintiff was a taxpayer was not in itself sufficient to show a litigable interest. *Spencer,* 408 S.W.2d at 80–81; *Moseley,* 524 S.W.2d at 447–49. *Cf. Smith v. Hendricks,* 136 S.W.2d 449, 454 (Mo.App.1939). Here there is no dispute that the election caused the expenditure of public funds.

*Collins,* 512 S.W.2d at 473, does not support appellants' position. While it does require that a taxpayer qua taxpayer must allege some injury and specify some damage to herself in her posture as a taxpayer in order to gain standing to sue a governmental unit, it also states "[s]uch interests may be in the form of an increased tax burden on a plaintiff to replenish the public funds illegally dissipated," *id.* at 473. The court quotes from *Castilo v. State Hwy. Commission of Missouri,* 312 Mo. 244, 279 S.W. 673 (banc 1925) the principle that:

---

1. According to appellants' brief, Lafayette, Saline and Johnson counties also had elections on November 7, 1978 pursuant to the provisions of § 48.020.2, at which they voted to remain counties of the third class rather than become counties of the second class, despite having attained the assessed valuation necessary to become counties of the second class.

" '[f]ailure to allege the ultimate fact that plaintiffs' taxes will be increased when this conclusion *necessarily arises from facts sufficiently pleaded* is not material.' " (emphasis added in *Collins,* 512 S.W.2d at 474).

In this case, respondent alleged that she was a resident, citizen and taxpayer of Callaway County, Missouri, pleaded the statute, § 48.020, RSMo Supp.1977, and the constitution, Mo.Const. art. VI, § 8, and alleged in paragraph eleven of her amended petition that the statute perverts the scheme of classification of counties and creates a fifth class of county in violation of the state constitution and that "an election under § 48.020.2 would be a nullity and the expenses of said election would be an unlawful expenditure of public funds."

We think that the necessary inference can be made from these pleadings that the unlawful expenditure would increase respondent's burden as a taxpayer since the additional expense of the election would necessarily come from public funds supplied by the taxpayer. *Collins* is thus not apposite.

Additionally, we agree with the trial court that this case is controlled by *Preisler v. Doherty,* 364 Mo. 596, 265 S.W.2d 404 (1954). In that case plaintiff sued for a declaratory judgment, after a state senatorial election, as a resident, citizen, taxpayer and qualified voter of the city of St. Louis, alleging that the senatorial redistricting scheme effected by the act of the Board of Election Commissioners pursuant to Mo. Const. art. III, § 8 was void because it violated that section in that the districts were not divided by population as evenly as possible. The court concluded that plaintiff had standing to sue. It adopted the conclu-

sion and reasoning of *Stiglitz v. Schardien,* 239 Ky. 799, 40 S.W.2d 315, 317 (App.1931) that:

"It is the primary rights of citizens that are violated by invalid statutes, which the court, in a proper case, may protect by injunction or other process." *Preisler,* 265 S.W.2d at 409.

*Stiglitz* also stated:

"It is settled that the courts, in a proper case, may interpose for the protection of political rights, and the right to be equally represented in the legislative bodies of the state is not only a political but a constitutional right. If an act of the Legislature infringes the constitutional rights of a citizen, taxpayer, and voter, he may invoke the processes of the courts to prevent the performance of a duty attempted to be imposed by such void act.

. . . . .

"The citizen possesses political as well as pecuniary and personal rights which may be the subject of an action to prevent the operation of unconstitutional legislation." *Id.*

In this case, respondent sued as a resident, citizen and taxpayer of Callaway County, and alleged that the classification of that county was violative of Mo.Const. art. VI, § 8. If her contention is correct, her rights as a citizen residing in Callaway County will be violated beginning January 1, 1979 because she will be governed by an improper form of county government.[2] As such, she may sue to vindicate her state constitutional right to live in a county with the powers and responsibilities of a county of the second class.

---

**2.** There are important differences in the services and protections available to the taxpayer and to the county as a whole between first class counties not having a charter form of government and second class counties, and between second and third class counties. For example, to name only a few, there are differences in budgeting, accounting, and purchasing practices and requirements, §§ 50.065, 50.095, RSMo Supp.1977; §§ 50.753–.760, 50.815, RSMo Supp.1975; and in the handling of coun-

ty funds, §§ 52.360–.420 RSMo Supp.1975. There is a county auditor, § 55.040 RSMo Supp. 1975; and a juvenile detention center, § 211.-331, RSMo 1969; and there are differences in the duties, size and responsibilities of the offices of sheriff, §§ 57.113–.115, 57.201, RSMo Supp.1975; prosecutor, §§ 56.010–.240, RSMo Supp.1975; assessor, § 53.050, RSMo 1969; § 53.073, RSMo Supp.1975; and treasurer, § 54.145, RSMo Supp.1975.

## II. *Classification of Counties*

■ We now reach the substantive question whether § 48.020.2 is unconstitutional because it provides for the creation of more than four classes of counties in violation of Mo.Const. art. VI, § 8. Section 8 provides:

"Provision shall be made by general laws for the organization and classification of counties except as provided in this constitution. The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions. A law applicable to any county shall apply to all counties in the class to which such county belongs."

Section 48.020.2, RSMo 1969, had provided:

"*Classification of counties into four classes for the purpose of organization and powers*

"All counties of this state are hereby classified, for the purpose of establishing organization and powers in accordance with the provisions of section 8, article VI, Constitution of Missouri, into four classes as follows:

Class 1. All counties now having or which may hereafter have an assessed valuation of three hundred million dollars and over shall be in the first class.

Class 2. All counties now having or which may hereafter have an assessed valuation of seventy million dollars and less than three hundred million dollars shall be in the second class.

Class 3. All counties now having or which may hereafter have an assessed valuation of ten million dollars and less than seventy million dollars shall be in the third class.

Class 4. All counties now having or which may hereafter have an assessed valuation of less than ten million dollars shall be in the fourth class."

In 1977, § 48.020 was amended, and among other changes the following provision was added:

"2. Whenever a county of the second class achieves an assessed valuation of three hundred million dollars or a county of the third class achieves an assessed valuation of seventy million dollars, it shall move into the next higher class after maintaining that valuation for the time period specified in section 48.030, unless the governing body of the county submits the question of remaining in the county's present class to a vote of the qualified electors of the county at the general election next following the certification by the state equalizing agency for the required number of successive years that the county possesses a valuation qualifying it to move to the higher class. The ballot of submission shall contain, but not be limited to, the following language:

☐ For the County remaining in the . . . . . Class.
☐ Against the County remaining in the . . . . . Class.

If a majority of the votes cast on the proposal by the qualified voters voting thereon are against the county remaining in its present class, then at the beginning of the county fiscal year following the election, the county shall move into the higher class. If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of remaining in the present class, the county shall remain in the class it is in at the time of the election and shall not move into the higher class unless and until such move is approved by a majority of the voters of the county or until the county achieves the assessed valuation necessary for an automatic move into that class as provided in subsection 1. If the voters vote for the county to remain in its present class, no further election shall be held on the proposal until the next succeeding state general or primary election."

Respondent contends that § 48.020.2, by providing that a county of the third class can remain so despite the fact that it has maintained for five years the assessed valuation necessary to become a county of the second class, creates a fifth class of county which has some of the attributes of both third and second class counties, in violation

of the constitution. It cites *Chaffin v. County of Christian,* 359 S.W.2d 730 (Mo. banc 1962) in support.

In *Chaffin* this court held that a statutory provision which required a vote of the electorate before a county could move from the fourth to the third class was unconstitutional because it would create a fifth class of county. It stated: "[t]he constitutional provision limited the classes of counties to four, and the general assembly provided that the common attribute, property, or character, should be the assessed valuation of the counties subject to classification." *Id.* at 734. The *Chaffin* court concluded:

"The enactment of subdivision 2 of § 48.030 added a variable that disrupted the common denominator of the classes. It added an element foreign to the concept of assessed valuation in providing that no county of the fourth class should become a county of the third class until the move was approved by the voters of the county. The defendants urge that this provision 'merely establishes one additional requirement for the passage of a fourth class county to a third class county'. What we are concerned with is the character and legal effect of this additional requirement. Under it, the progression of a fourth-class county no longer depends upon the general law but on a favorable vote of the county electors. An unfavorable vote puts a fourth-class county in a status or category which is no longer strictly fourth class or third class as prescribed in § 48.020. Under the new statutory provision, the common attribute of assessed valuation is no longer controlling. In this instance, Christian County has the assessed valuation of a third-class county but retains the designation and is permitted and required to exercise the powers and be subject to the restrictions of a fourth-class county. This perverts the entire scheme of classification and in effect creates an additional class of counties in violation of § 8, Art. VI, 1945 Constitution." 359 S.W.2d at 735.

Appellants seek to distinguish *Chaffin* on the basis that it dealt with § 48.030, RSMo 1959, entitled "Method of determining classes", and providing in part:

"*Method of determining classes.* 1. For the purpose of determining the *initial* class of the various counties, the assessed valuations of the respective counties as set forth on pages 333 to 400 of the 'Journal of the Board of Equalization of the State of Missouri for the Year Ending December 31, 1944' shall be used. Hereafter no county shall be deemed as *moving from a lower class to a higher class or from a higher class to a lower class until the assessed valuation* of the county is such as to place it in the other class for five successive years   .   .   .

"2. In addition to the required increase in valuation for five successive years, and the certification by the state equalizing agency, no county of the fourth class shall become a county of the third class until the question is submitted to a vote of the people at a general election, and a majority of the electors voting on the question shall vote in favor thereof. The change from one classification to another shall become effective at the beginning of the county fiscal year following the general election at which the approval of the people is obtained." (emphasis added).

Appellants assert that the use of the word "initial" indicates that assessed valuation was only to be the critical distinguishing factor between classes initially, that § 48.030 dealt with only the effective date of the classification and not the classification itself, and therefore that once the initial classification was complete, the powers and restrictions conferred on the classes, not their assessed valuation, was to be the mechanism used to distinguish between them. This is logical, it is asserted, because the critical distinction between classes is their powers and restrictions, not the assessed valuation of the counties classified within them, since that valuation can vary greatly within a given class. Thus, the fact that the present § 48.020.2 makes the results of an election rather than assessed valuation determinative is irrelevant, because *Chaffin* dealt only with an attempt to make something other than assessed valua-

tion determinative of a county's *initial* classification.

This argument is not valid, as shown by the very words of § 48.030 quoted above. It provided that valuation should determine the class, and "hereafter" no change in classification could be made until the appropriate level of assessed valuation was reached. A county could not move from one class to another unless it was initially placed in a class and then a change in valuation caused it to move to a different class. Thus, valuation is made the key factor for change in class as well as for initial classification. Appellants' argument is simply incorrect. Once initial classification was made, assessed valuation was to be determinative of any change in classification. Appellants confuse cause and effect. The assessed valuation determines the county's class, and the county's class its powers and restrictions. To say that the powers and restrictions conferred determine the class is to put the cart before the horse.

Appellants suggest that since the legislature may change the powers and restrictions accorded to each class or the assessed valuation used to define each, and yet not create an additional class of county, it may provide for an additional factor, approval by the electorate, before a classification is changed. However, appellants admit in their brief that § 48.020.2 provides for "the self-determination of the electorate to remain in a particular class", and that under that section "[t]he electorate simply decides they now prefer the powers and restrictions of counties of the third class as opposed to counties of the second class." Yet, as noted, *supra*, this is exactly what was prohibited in *Chaffin*, because then "the progression of a fourth-class [here a third class] county no longer depends upon the general law but on a favorable vote of the county electors . . . the common attribute of assessed valuation is no longer controlling." *Chaffin*, 359 S.W.2d at 735. The fact that in *Chaffin* the vote was mandatory and that under § 48.020.2 it is discretionary is irrelevant, for in both cases the electorate may determine whether a classification is changed.

We thus conclude that § 48.020.2 is unconstitutional because it provides for the creation of a fifth and sixth classification of counties, that is, those counties, like Callaway, which despite an assessed valuation of between seventy and one hundred twenty-five million dollars remain in the third rather than move to the second class because of a vote of the electorate, and these counties, like Jefferson, which despite an assessed valuation of between three hundred and four hundred million remain in the second rather than move to the first class because of a vote of the electorate, in violation of Mo.Const. art. VI, § 8.

The elections held pursuant to § 48.020.2, on November 7, 1978, are nullities and should not have been held. Callaway County will become a second class county on January 1, 1979, and Jefferson County will become a first class county on January 1, 1979.

The judgment of the circuit court declaring the statute unconstitutional is affirmed.

All of the Judges concur.