

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JESSICA A. GOODMAN, SALINE COUNTY ASSESSOR, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD86126 |
| SALINE COUNTY COMMISSION, KILE GUTHREY, JR., PRESIDING COMMISSIONER, STEPHANIE GOODEN, NORTHERN COMMISSIONER, CHARLES MONTE FENNER, SOUTHERN COMMISSIONER, and CINDY SIMS, SALINE COUNTY COLLECTOR, | ) ) ) ) ) ) ) ) ) ) ) | Filed: April 2, 2024 |
| Respondents. | ) | |

**Appeal from the Circuit Court of Saline County**
**The Honorable Kelly Ann Rose, Judge**

**Before Division One: Alok Ahuja, P.J., and**
**Cynthia L. Martin and Thomas N. Chapman, JJ.**

This case involves two disputes between the Assessor of Saline County, on the one hand, and the County Commission and County Collector, on the other: (1) a dispute over the percentage of *ad valorem* property tax collections which the County is required to deposit into an assessment fund to finance the operations of the Assessor's office; and (2) a dispute concerning the legality of certain

compensation the Assessor intended to pay to members of her staff. The circuit court dismissed the Assessor's petition, which sought declaratory and injunctive relief. The Assessor appeals.

Because this appeal involves the constitutional validity of a Missouri statute, it falls within the Missouri Supreme Court's exclusive appellate jurisdiction under Article V, § 3 of the Missouri Constitution. We accordingly order that the appeal be transferred to the Missouri Supreme Court for decision.

**Factual Background**

On October 25, 2022, Jessica Goodman, in her capacity as the elected Saline County Assessor, filed a petition in the Circuit Court of Saline County against the Saline County Commission; the three County Commissioners at that time (Kile Guthrey, Jr., Charles Monte Fenner, and Stephanie Gooden); and Cindi Sims, the Saline County Collector. Since the filing of the Assessor's petition, Becky Plattner has been elected as a County Commissioner in place of Kile Guthrey, Jr., and has been substituted for him as a defendant. We refer to the County Commission and the Commissioners collectively as "the Commission," and refer to all defendants collectively as "the County."

In Count I, the Assessor's petition alleged that on June 10, 2022, she closed her office for a day because the year's tax valuations had been completed. The petition alleged that, "[a]s a benefit to [*sic*] the work done by her employees, and an agreement duly reached between each employee and the Assessor, the Assessor declared the day off would be compensated." The petition alleged, however, that the Commission had refused to authorize payment of compensation to the Assessor's employees for June 10. The petition contended

2

that, by denying this compensation, the Commission had acted in excess of its authority, and in derogation of the Assessor's authority to determine how the funds appropriated for her office are allocated. (Count I also included an additional dispute about employee pay increases that the parties agree is now moot).

In Count II, the Assessor's petition alleged that Saline County is a fourth-class county with an obligation under § 137.720[1] to deposit one percent of all *ad valorem* property tax collections into the County's assessment fund. Despite that mandatory obligation, the petition alleged that the Commission has only been authorizing the deposit of one-half of one percent of property tax collections into the assessment fund, thereby significantly underfunding the Assessor's operations.

Count III contended, in the alternative, that the court should declare that Saline County is properly classified as a third-class county. The Assessor alleged that, as a fourth-class county, Saline County was "operat[ing] under the laws of this state applying to [counties of] the second classification." § 48.020.1. The petition listed the certified total assessed valuations of Saline County property for 2016 through 2022. The Assessor alleged that, for more than five years, the total assessed valuation of property in the County had fallen below the monetary threshold required for it to qualify as a second-class county. The petition alleged that, "[a]s Saline County has had five (5) consecutive years of assessed valuation placing it as a third class county, Section 48.030 mandates Saline County be

---

[1]     Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2023 Cumulative Supplement.

3

classified as a county of the third class beginning with the 2021 fiscal year or after the general election."

In Count IV, the Assessor requested a temporary restraining order against the Collector, requiring her to deposit one percent of the County's property tax collections in the assessment fund. Count V of the Assessor's petition prayed for an award of attorney's fees against the Commission. To justify a fee award, the Assessor contended that the Commission's failure to comply with its ministerial duties to implement the Assessor's employee compensation decisions, and to deposit required funds in the assessment fund, were "arbitrary, capricious, or in bad faith." The petition alleged that the Commission's "budgetary decisions were consciously designed to hamstring the [Assessor] and [were] being used as retribution for the [Assessor] speaking out against" the Commission.

The Commission moved to dismiss the Assessor's petition. The Commission argued that the County Commission and its members were not proper parties-defendant with respect to the Assessor's claims concerning payments to the assessment fund, and that the extra vacation day authorized by the Assessor was an unlawful bonus payment to Assessor's office employees for work previously performed.

In response to the Assessor's claim that Saline County had been reclassified as a third-class county under § 48.030, the Commission argued that the County was exempted from this reclassification process by statute. The Commission noted that, under § 48.020.1, fourth-class counties are defined as follows:

> Classification 4. All counties which have attained the second classification prior to August 13, 1988, and which would otherwise return to the third classification after August 13, 1988, because of changes in assessed valuation shall remain a county in the second

4

classification and shall operate under the laws of this state applying to the second classification.

The Commission argued that "RSMo § 48.020(1) is explicit in that changes in assessed valuation are immaterial to a change in classification for Fourth Class counties, particularly for those counties which would return to the third classification as the Assessor is seeking." The Collector filed a separate motion to dismiss, which similarly argued that Saline County was not subject to reclassification pursuant to § 48.030, because under the definition of fourth-class counties in § 48.020.1, "changes in assessed valuation are immaterial."

In her opposition to the motions to dismiss, the Assessor argued, among other things, that it would be unconstitutional to exempt Saline County from the assessed-valuation-based reclassification process specified in § 48.030, as the Commission and the Collector advocated:

> [T]he interpretation offered by the Defendants would run afoul of Section 8, Article VI of the Missouri Constitution. That section requires that counties be segregated into classes that have systematic relations founded upon common properties or characters. *See Chaffin v. Christian County*, 359 S.W.2d 730, 734 (Mo. banc 1962); Article VI, § 8 . . . . The legislature, following this constitutional mandate, determined the classes should be separated by assessed valuation, as shown in Section 48.020. However, the interpretation set forth by the Defendants would state the common classification of current assessed valuation is being used for three classes of counties, while the classification status as of August 13, 1988, is being used for one set of counties. As such, this would be unconstitutional and similar to the voting process struck down in *Chaffin. See id.*

In a footnote, the Assessor also argued that, to the extent the defendants' arguments depended on a 1995 amendment to Article VI, § 8, the 1995 amendment was itself unconstitutional, because it had been adopted in violation of the single-subject rule found in Article XII, § 2(b) of the Missouri Constitution.

5

On March 8, 2023, the circuit court issued its judgment dismissing all claims in the Assessor's petition for failure to state a claim upon which relief can be granted. As to Count I, the court found that the Assessor's petition alleged facts which established that she gave her employees an improper bonus under the Missouri Constitution; the court also concluded that the Commission's authority to determine the Assessor's budget authorized it to deny workers additional compensation even if that compensation were otherwise lawful. The court dismissed Counts II-IV on multiple grounds. The court concluded that it lacked authority to reclassify Saline County, and that the Assessor had failed to allege the assessed value of the property in Saline County as of August 13, 1988, which the court deemed necessary to resolve the Assessor's claims.

The Assessor appeals.

## Discussion

"Before reaching the merits of a case on appeal, an appellate court must first determine its jurisdiction to do so." *Smith v. Smith*, 682 S.W.3d 126, 133 (Mo. App. W.D. 2024) (citing *Johnson v. Johnson*, 668 S.W.3d 316, 322 (Mo. App. W.D. 2023)); *see also, e.g.*, *In re Adoption of K.L.C.B.*, 674 S.W.3d 1, 5 (Mo. App. W.D. 2023) (citing *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 399 (Mo. 2016)). This case presents two jurisdictional issues. While one is easily dispensed with, the other requires that this appeal be transferred to the Missouri Supreme Court, where appellate jurisdiction properly lies.

## I.

Under Rule 67.03, "[a]ny involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." In this case,

6

the circuit court's judgment does not specify that its dismissal would be with prejudice, and it is accordingly presumed to have been entered without prejudice.

The fact that the circuit court dismissed the Assessor's petition without prejudice "raises a question of whether the judgment is final and appealable," because the Missouri Supreme Court "occasionally has referred to a 'general rule that a dismissal without prejudice is not a final judgment and, therefore, is not appealable.'" *Naylor Sr. Citizens Housing, LP v. Side Constr. Co.*, 423 S.W.3d 238, 242 (Mo. 2014) (citation omitted). *Naylor* noted, however, that "[i]t is unclear to what extent, if any, this 'general rule' ever was followed"; it observed that "[o]ver time, . . . exceptions seemed to have swallowed all or nearly all of whatever rule once might have existed." *Id.* at 243. In particular, the Supreme Court has held that, "[w]hen the party elects not to plead further and stands on the original pleadings, the dismissal without prejudice is considered a final and appealable judgment." *Mayes v. St. Luke's Hosp.*, 430 S.W.3d 260, 265 (Mo. 2014) (citing *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. 1991)); *see also, e.g.*, *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 67 n.2 (Mo. 2018); *Dunn v. Precythe*, 557 S.W.3d 454, 456 n.5 (Mo. App. W.D. 2018).

In this case, the Assessor has chosen to stand on her petition and appeal the circuit court's dismissal order. The judgment is accordingly final and appealable.

## II.

Although the judgment in this case may be appealable, we conclude that it is not appealable *to this Court*. Instead, this appeal falls within the Missouri Supreme Court's exclusive jurisdiction.

Section 48.020.1 establishes four classes of counties in Missouri. As noted above, the fourth class, in which Saline County falls, is defined as follows:

> Classification 4. All counties which have attained the second classification prior to August 13, 1988, and which would otherwise return to the third classification after August 13, 1988, because of changes in assessed valuation shall remain a county in the second classification and shall operate under the laws of this state applying to the second classification.

*Id.* The other three classes of counties, Classifications 1, 2 and 3, are defined based on the aggregate assessed valuation of the real and personal property in the county. *Id.*

Section 48.030.1 provides that a county's classification may change if "the assessed valuation of the county is such as to place it in . . . [an]other class for five successive years." In her petition, the Assessor contended in Count III that Saline County had been reclassified as a third-class county by operation of § 48.030, because the assessed valuation of property in the County had fallen below the threshold for second-class counties for more than five consecutive years.

In their motions to dismiss, the Commission and the Collector argued that, based on the definition of fourth-class counties in § 48.020.1, those counties are exempt from the assessed-valuation-based reclassification process specified in § 48.030. In essence, they contended that fourth-class counties like Saline County have to be treated as second-class counties *in perpetuity*, without regard to any fluctuations in the assessed valuation of property in those counties.

8

The Assessor argued in the circuit court, and argues on appeal, that if the County's reading of § 48.020.1 is correct, and if fourth-class counties are wholly exempt from the assessed-value-based classification scheme applicable to all other counties, then the definition of fourth-class counties in § 48.020.1 is unconstitutional. The Assessor argues that the County's argument presents a constitutional problem because it would "create two different criteria for classifying counties: the first [assessed-valuation-based] criterion for first through third class counties and another criterion for fourth class counties [based on pre-1988 classification as a second-class county]."

The Assessor's constitutional challenge to § 48.020.1 (if that section is read as the defendants suggest) triggers the Missouri Supreme Court's exclusive appellate jurisdiction. Under Article V, § 3 of the Missouri Constitution, the Missouri Supreme Court has "exclusive appellate jurisdiction in all cases involving the validity of a . . . statute . . . of this state." "[T]he Court's 'exclusive appellate jurisdiction is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied.'" *Accident Fund Ins. Co. v. Casey*, 536 S.W.3d 360, 364 (Mo. App. W.D. 2017) (quoting *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. 2015)). This includes where an individual raises arguments that "necessarily attack the validity of provisions of [the statute] itself." *Casey*, 536 S.W.3d at 364. If <u>any</u> of the issues in a case raise questions of constitutional validity, the Supreme Court has jurisdiction over *the entire case*, not just the discrete constitutional question. *Lester v. Sayles*, 850 S.W.2d 858, 861 (Mo. 1993).

The Assessor only challenges the constitutionality of § 48.020.1's definition of fourth-class counties *if* the Court were to adopt the County's interpretation (which reads that definition to exempt fourth-class counties perpetually from any assessed-valuation-based reclassification). Although the Assessor's constitutional challenge is contingent on a particular interpretation of § 48.020.1, it nevertheless triggers the Supreme Court's jurisdiction. In *Boeving v. Kander*, 496 S.W.3d 498 (Mo. 2016), opponents of an initiative petition filed suit, contending that the signatures collected by the initiative's proponents were invalid, and that the initiative accordingly should not be certified to appear on the ballot. In response, the initiative proponents argued that nothing in chapter 116, RSMo, required the rejection of the signatures they had collected. Proponents *also* argued, in the alternative, that *if* chapter 116 were interpreted to invalidate their signatures, then the relevant statutes would be unconstitutional. Despite the contingent, alternative nature of the proponents' constitutional argument in *Boeving*, the Supreme Court held that it triggered that Court's exclusive appellate jurisdiction. The Court explained:

> Opponents did not assert any claims in the trial court that, on appeal, fall within this Court's exclusive jurisdiction, and the Secretary [of State] did not raise any such claims in defending Opponents' challenges. Proponents, however, did raise such a claim. They argued that if – but only if – the Opponents are correct (i.e., that one or more statutory provisions in chapter 116 require the Secretary not to count the signatures Proponents had gathered and submitted), then whichever provisions in chapter 116 mandate such a result are unenforceable because they are an unconstitutional infringement of Proponents' right to propose constitutional amendments by initiative petition.
>
> The trial court never reached Proponents' fallback, constitutional claim because it determined that chapter 116 does not

contain any statutory provisions requiring the Secretary to reject the signatures gathered and submitted by Proponents. By the same token, the court of appeals may well have affirmed – and this Court does affirm – the trial court's judgment solely as a matter of statutory construction without reaching Proponents' alternative, constitutional claim. But, "[e]xclusive appellate jurisdiction of a case cannot depend upon how certain issues of that case are decided, with appellate jurisdiction in this court if decided one way but jurisdiction in the court of appeals if decided the other way." Instead, where any party properly raises and preserves in the trial court a real and substantial (as opposed to merely colorable) claim that a statute is unconstitutional, this Court has exclusive appellate jurisdiction over any appeal in which that claim may need to be resolved. . . .

Here, if the appellate court agreed with Opponents' claim that – properly construed – one or more of sections 116.190.4, 116.180, and 116.120.1 require the Secretary to reject the signatures submitted by Proponents, then that court necessarily would have to address Proponents' real and substantial claim that these statutes (so construed) are unconstitutional on a claim Proponents properly raised and preserved in the trial court. As a result of that possibility, exclusive appellate jurisdiction over Opponents' appeal rests with this Court. The fact that this Court does not need to reach the merits of Proponents' constitutional claim in order to resolve Opponents' appeal does not change the analysis or give the court of appeals appellate jurisdiction.

*Boeving v. Kander*, 496 S.W.3d 498, 503-04 (Mo. 2016) (citations omitted).

We recognize that, in *Ritter v. Ashcroft*, 561 S.W.3d 74, 85 (Mo. App. W.D. 2018), and in *City of Slater v. State*, 494 S.W.3d 580, 585 (Mo. App. W.D. 2016), this Court suggested that contingent constitutional arguments (like those raised in *Boeving*, and in this case) were insufficient to invoke the Supreme Court's exclusive appellate jurisdiction. The statements in *Ritter* and *City of Slater* were not necessary to the jurisdictional holdings in either case. Nevertheless, to the extent the descriptions of the Supreme Court's exclusive appellate jurisdiction in

*Ritter* and *City of Slater* are inconsistent with *Boeving*, they should no longer be followed. *See* Mo. Const. Art. V, § 2.[2]

There are two exceptions to the Supreme Court's exclusive jurisdiction over a constitutional challenge to a statute: (1) if the constitutional claim was not properly preserved for review; or (2) if the claim is "merely colorable" rather than "real and substantial." *See*, *e.g.*, *Butala v. Curators of Univ. of Mo.*, 620 S.W.3d 89, 92 n.2 (Mo. 2021); *S.A.B. v. J.L.R.*, 675 S.W.3d 245, 254-55 & n.3 (Mo. App. E.D. 2023); *Donaldson v. Mo. State Bd. of Registration for Healing Arts*, 623 S.W.3d 152, 156 (Mo. App. W.D. 2020) (quoting *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. 2015)).

In orderly to properly raise a constitutional challenge, a party must:

(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to be have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Mayes v. Saint Luke's Hosp.*, 430 S.W.3d 260, 266 (Mo. 2014).

The County argues that the Assessor failed to raise her constitutional challenge at the first available opportunity, since she only raised the constitutional issue in response to the defendants' motions to dismiss, rather than in her petition. We disagree. A constitutional issue is timely when it is "made when the occasion for the desired ruling first appears." *G.B. v. Crossroads*

---

[2] Because this opinion refuses to follow statements made in this Court's prior opinions in *Ritter* and *City of Slater*, the opinion has been reviewed and approved by order of the Court *en banc*. *See* S. Ct. Operating Rule 22.01; W.D. Special Rule 31.

*Acad.*, 618 S.W.3d 581, 593 (Mo. App. W.D. 2020) (quoting *Mayes*, 430 S.W.3d at 267).

In this case, Count III of the Assessor's petition properly and fully asserted her affirmative claim for relief, without reference to any constitutional principles. The Assessor contended that, as a fourth-class county, § 48.020.1 mandated that Saline County "shall operate under the laws of this state applying to the second classification." The Assessor's petition pointed out that one of the laws applicable to second-class counties is § 48.030, which provides that counties shall be reclassified where the county's assessed property valuation falls within the valuation range of a different classification for five successive years. The Assessor then alleged that the County had been reclassified as a third-class county, because its assessed valuation had fallen below the valuation required of a second-class county for a successive five-year period. The affirmative claim for relief in Count III of the Assessor's petition required no reference to the Missouri Constitution.

The constitutional issue only arose when the County argued that the definition of fourth-class counties in § 48.020.1 had the effect of *permanently* treating those counties as second-class counties, with no possibility of a change to that classification, whatever the counties' assessed property valuation. In response, the Assessor asserted that such a reading of § 48.020.1 would violate Article VI, § 8 of the Missouri Constitution. The Assessor's contention that it would be unconstitutional to exempt class-four counties from § 48.030's reclassification process was timely raised, since the Assessor asserted her constitutional challenge as soon as the County claimed an exemption.

The Supreme Court has recognized that "'there can be no fixed rule as to when or how or at what stage in the proceedings the [constitutional] question should be raised in each case.'" *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 428 (Mo. 2016) (quoting *Hohlstein v. St. Louis Roofing Co.*, 42 S.W.2d 573, 578 (Mo. 1931)). In the circumstances of this case, the Assessor's responsive, contingent constitutional argument was raised at the first opportunity. The purpose of requiring constitutional issues to be raised at the first opportunity is to "prevent surprise to the opposing party and accord the trial court an opportunity to fairly identify and rule on the issue." *Dieser*, 498 S.W.3d at 429 (citations omitted). The Assessor's assertion of the constitutional claim in her response to the defendants' motions to dismiss satisfied this purpose, since the parties were able to brief and argue the issue before the circuit court's entry of its dispositive ruling.

The County also argues that the Assessor waived any constitutional claim at the hearing on the defendants' motions to dismiss. We once again disagree. The following colloquy occurred between the circuit court and the Assessor's counsel at the motion hearing:

> [Assessor's Counsel]: . . . And so we believe, as the plaintiffs, that this Classification 4 can be interpreted in such a way that this shall language that it remains a second class can be constitutional.
>
> THE COURT: Can be what?
>
> [Assessor's Counsel]: Constitutional. It's – ***we're not saying that the law is unconstitutional on its face***. We haven't pled that. What we're saying is –
>
> THE COURT: That's kind of what it sounded like to me, though.

[Assessor's Counsel]:  Well, so that's one argument, but what we pled and what we're arguing is that this can be interpreted differently and that is that on August 13, 1988, the clock essentially reset. . . .  So what it looks like to me what they're trying to do, Your Honor, is the legislature was saying, "We're going to reset that clock.  As of August 13, 1988, we're going to reset it.  You're not going to be reduced because of ad valorem taxes as of that date.  But afterwards, if five years later the rest of the statutes apply to you, then you should move down to third class.  You're not going to be permanently fixed as second class." ***And such a reading would be constitutional and such a reading would allow for all the statutes to be upheld and nothing be found unconstitutional, Your Honor***.

(Emphasis added.)

The County seizes on the first emphasized statement by the Assessor's counsel ("we're not saying that the law is unconstitutional on its face") to contend that the Assessor thereby abandoned the constitutional arguments made in her written responses to the motions to dismiss.  Read in context, however, the oral argument by the Assessor's counsel is fully consistent with the Assessor's written submissions to the circuit court, and to this Court:  that under *her* reading of the relevant statutes, Saline County is subject to reclassification under § 48.030, and no constitutional issue arises; but if *the County's* position were to be adopted, it would render § 48.020.1 unconstitutional.

We also conclude that the Assessor's constitutional claim is real and substantial, not merely colorable.  To determine if a claim is real and substantial, we ask if it "involves fair doubt and reasonable room for disagreement," rather than being "so legally or factually insubstantial as to be plainly without merit[.]" *Donaldson v. Mo. State Bd. of Registration for Healing Arts*, 623 S.W.3d 152, 156 (Mo. App. W.D. 2020) (cleaned up).  "'In the context of the "not merely

15

colorable" test, the word "colorable" means feigned, fictitious or counterfeit, rather than plausible.'" *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 52 (Mo. 1999)).

The Assessor's constitutional argument relies on Article VI, § 8 of the Missouri Constitution, which provides in relevant part:

> Provision shall be made by general laws for the organization and classification of counties except as provided in section 18(a) or section 18(m) of this article or otherwise in this constitution. The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions.

The Assessor's constitutional challenge, at a minimum, involves fair doubt and reasonable room for disagreement, in light of the Missouri Supreme Court's decisions in *Chaffin v. Christian County*, 359 S.W.2d 730 (Mo. 1962), and *Russell v. Callaway County*, 575 S.W.2d 193 (Mo. 1978). *Chaffin* held that an earlier version of § 48.030 was unconstitutional, because it provided that, even if a fourth-class county satisfied an assessed-valuation threshold to become a third-class county, the fourth-class county would only be reclassified if the county's electorate approved the change by vote. 359 S.W.2d at 731. In finding that the voter-approval requirement was unconstitutional, the Supreme Court emphasized that the voter-approval requirement departed from the assessed-valuation criteria which otherwise governed county classifications. The Court explained:

> Prior to the adoption of the 1945 Constitution, there was no constitutional provision with respect to classification of counties or limitation upon the number of classes which the legislature might create. As a result, numerous classifications were made for different

16

purposes.  The purpose of [Article VI, § 8] was to simplify and make more effective the organization and operation of the counties.  It provides that the provisions for the organization and the classification of counties shall be by *general laws* and that the organization and powers of each class shall be defined by *general laws*.

> *A 'class' as used in this constitutional provision denotes 'a group, set, or kind marked by common attributes or a common attribute'.  To classify is 'to group or segregate in classes that have systematic relations usually founded on common properties or characters'.*  The fundamental concept is that of common attributes, common properties, or common characters.  The constitutional provision limited the classes of counties to four, and the general assembly provided that the common attribute, property, or character, should be the assessed valuation of the counties subject to classification. . . .

The enactment of subdivision 2 of § 48.030 added a variable that disrupted the common denominator of the classes.  It added an element foreign to the concept of assessed valuation in providing that no county of the fourth class should become a county of the third class until the move was approved by the voters of the county. . . . Under it, the progression of a fourth-class county no longer depends upon the general law but on a favorable vote of the county electors. . . . Under the new statutory provision, the common attribute of assessed valuation is no longer controlling.  In this instance, Christian County has the assessed valuation of a third-class county but retains the designation and is permitted and required to exercise the powers and be subject to the restrictions of a fourth-class county.  This perverts the entire scheme of classification and in effect creates an additional class of counties in violation of § 8, Art. VI, 1945 Constitution.

*Id.* at 734-35 (final emphasis added; citations omitted); *accord*, *Russell*, 575 S.W.2d at 199 (provision allowing voters to reject an assessed-valuation-based reclassification was unconstitutional, since the relevant statutes provide that "valuation is made the key factor for change in class as well as for initial classification").

17

In the circuit court, and more explicitly on appeal, the County has hinged its arguments on the claim that fourth-class counties have been exempted from the assessed-valuation-based classification system otherwise applicable to first-, second-, and third-class counties. Thus, the County's brief argues that "§ 48.020(1) RSMo is explicit in that changes in assessed valuation are immaterial to a change in classification for fourth class counties," and that "§ 48.030 RSMo, and its valuation based reclassification scheme, is simply not intended to apply to fourth class counties." Thus, the County explicitly asserts that fourth-class counties have been exempted from the assessed-valuation-based classification system which applies to all other counties. At a minimum, the County's argument is in tension with *Chaffin*'s holding that departures from an assessed-valuation-based classification system are unconstitutional.

The County emphasizes that, since *Chaffin* and *Russell* were decided, Article VI, § 8 was amended, in 1995, to remove a sentence which stated that "[a] law applicable to any county shall apply to all counties in the class to which such county belongs." Quoted in *Chaffin*, 359 S.W.2d at 733. As our extensive quotation from *Chaffin* reflects, however, the Court did not rely on the since-deleted sentence when it held that the General Assembly could not create exceptions to an assessed-valuation-based classification scheme. Instead, *Chaffin* relied on the references in Article VI, § 8 to "general laws," and to the establishment of a "classification" system dividing counties into discrete "classes." All of the key terms on which *Chaffin* relied remain in Article VI, § 8 today.

18

We recognize that *Chaffin* and *Russell* involved voter-approval requirements which were different than the "grandfather" clause which currently defines fourth-class counties. We also recognize that the statutes at issue in *Chaffin* and *Russell* allowed *voters* to decide whether a county would be subject to the classification otherwise dictated by statutory criteria – while under the County's argument, it is *the General Assembly* which has decided that class-four counties are exempt from an assessed-valuation-based reclassification. While *Chaffin* and *Russell* may not *dictate* a ruling in the Assessor's favor, they establish – at a minimum – that there is "fair doubt and reasonable room for disagreement" concerning the merits of the Assessor's constitutional claim. *Donaldson*, 623 S.W.3d at 156.

Moreover, even if *Chaffin* and *Russell* were completely distinguishable from this case, we would be left with a constitutional question on which there was no relevant precedent. "One indication that a claim is real and substantial is if it is one of first impression with [the Supreme Court]." *Mayes*, 430 S.W.3d at 270.

Accordingly, because the Assessor has preserved a challenge to the validity of § 48.020.1 which is real and substantial, exclusive jurisdiction of this appeal lies in the Missouri Supreme Court under Article V, § 3 of the Missouri Constitution.

## Conclusion

Pursuant to Article V, § 11 of the Missouri Constitution and § 477.080, we order that this appeal be transferred to the Missouri Supreme Court, where jurisdiction properly lies.

Alok Ahuja, Judge

All concur.